STONE & WEBSTER ENGINEERING CORPORATION, Plaintiff-Appellee,

v.

David B. ILSLEY; Robin W. Waller, Workers Compensation Commissioner, Second District, State of Connecticut; John A. Arcudi, Chairman, Board of Compensation Commissioners, State of Connecticut; Sprinkler Fitters Union Local 676; and National Automatic Sprinkler Industry Welfare Fund, Defendants,

David B. Ilsley; Robin W. Waller, Workers Compensation Commissioner, Second District, State of Connecticut; John A. Arcudi, Chairman, Board of Compensation Commissioners, State of Connecticut; Sprinkler Fitters Union Local 676, Defendants-Appellants.

Nos. 689, 990, Dockets 81–7640, 81–7660.

United States Court of Appeals, Second Circuit.

Argued March 10, 1982.

Decided Sept. 30, 1982.

---

Paul E. Knag, Stamford, Conn. (Mark E. Fuhrmann, Cummings & Lockwood, Stamford, Conn., on the brief), for plaintiff-appellee.

Norman Zolot, Hamden, Conn., for defendants-appellants Ilsley and Sprinkler Fitters Union Local 676.

Christina G. Dunnell, Asst. Atty. Gen., Hartford, Conn. (Carl R. Ajello, Atty. Gen., Bernard F. McGovern, Jr., Robert E. Walsh, Asst. Atty. Gen., Hartford, Conn., on the brief), for defendants-appellants Waller and Arcudi.

Before NEWMAN and CARDAMONE, Circuit Judges, and BURNS, District Judge.[*]

CARDAMONE, Circuit Judge:

We are called upon to determine whether state law may require an employer to provide health and life insurance coverage for a former employee now receiving workers' compensation due to a job related injury. Section 31–51h of the General Statutes of Connecticut[1] set forth in the margin so

---

[*] The Honorable Ellen Bree Burns, Judge of the United States District Court for the District of Connecticut, sitting by designation.

1. Connecticut General Statutes Annotated § 31–51h(a) (West Supp. 1981) provides, in pertinent part:

No employer, private, municipal or state, shall cancel or withhold accident and health insurance or life insurance coverage of any employee or his dependents or cease to make payments or contributions at the regular hourly or weekly rate for full-time employees for each week of disability to an employee's welfare fund as defined in subsection (h) of section 31–53 while the employee is eligible to receive or is receiving workers' compensation payments pursuant to chapter 568 or is receiving a continuation of salary or wages under a provision for sick leave payments for time lost for on the job injury. Such accident and health insurance coverage may include but shall not be limited to coverage provided by insurance or directly by the employer for the following health care services: Medical, surgical, dental, nursing and hospi-

provides. In a suit brought by an employer seeking a declaratory judgment, the district court granted the employer summary judgment and held that the Connecticut statute "relates to" employee benefit plans and is therefore preempted by the Employee Retirement Security Act of 1974, 29 U.S.C. § 1001 et seq. (ERISA). For the reasons which follow, we affirm.

## I

· This action was instituted by plaintiff Stone & Webster Engineering Corporation (Stone & Webster), a company engaged in the design and construction of a nuclear power facility in Waterford, Connecticut. The defendants-appellants are: David B. Ilsley, a former employee of Stone & Webster; Sprinkler Fitters Union Local 676 (Union), the labor organization representing Ilsley which had a collective bargaining agreement with Stone & Webster and whose appeal is joined with that of appellant Ilsley; Robin W. Waller, a Connecticut Workers Compensation Commissioner, and John A. Arcudi, Chairman of the Board of Compensation Commissioners of the State of Connecticut—both of whom appeal on behalf of the State of Connecticut. The National Automatic Sprinkler Industry Welfare Fund (Fund) is a national employee welfare fund to which Stone & Webster makes contributions on behalf of its employees pursuant to a collective bargaining agreement. The Fund was a defendant below, but did not appeal. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America filed an amicus curiae brief in support of defendants-appellants.

## II

Familiarity with the undisputed facts fully set forth in the district court's opinion is assumed. See *Stone & Webster Engineering Corp. v. Ilsley*, 518 F.Supp. 1297 (D.Conn.1981). We recite only those facts necessary to resolve the issue before us on appeal.

In 1979 Stone & Webster, a Massachusetts corporation, employed defendant David Ilsley as a sprinkler fitter at its Waterford project. He commenced work on January 9, 1979 and was injured in the course of his employment on January 30, 1979. Ilsley has not been able to return to work since that time. Stone & Webster complied with the Connecticut Workers Compensation Law by insuring its obligations through Aetna Casualty and Surety Company. Neither plaintiff nor its insurer contested Stone & Webster's liability to Ilsley for workers' compensation under the Workers Compensation Act, section 31–275 et seq. of the General Statutes of Connecticut. In fact, Aetna entered into a voluntary agreement to pay compensation due under that act.

Stone & Webster is a party to a collective bargaining agreement with the Union which requires the corporation to pay into the Fund 75 cents per hour for all hours worked by each employee. The Fund provides eligible employees and their dependents coverage for medical, surgical and life insurance benefits. During the period of Ilsley's employment, Stone & Webster made the contributions required by the collective bargaining agreement. However, it ceased doing so from the date of Ilsley's disabling injury.

In his claim to the Workers Compensation Commissioner Ilsley alleged that Stone & Webster violated the Connecticut statute by not making contributions to the Fund while he was incapacitated with a compensable injury. On July 18, 1980, appellant Waller issued a "Finding and Award" requiring Stone & Webster, in accordance with Conn. Gen.Stat. § 31–51h, to continue its contributions to the Fund on behalf of Ilsley so long as he is eligible to receive workers' compensation benefits. Stone & Webster appealed this decision to the Appellate Division of the Workers Compensation Commission (which appeal has not been decided)

tal care and treatment, drugs, diagnosis or treatment of mental conditions or alcoholism, and pregnancy and child care.

and instituted the present action in the district court to enjoin defendants from enforcing section 31–51h and the Finding and Award.[2]

In Stone & Webster's instant action jurisdiction was claimed pursuant to 28 U.S.C. §§ 1331 ("arising under" jurisdiction) and 1337 (jurisdiction to regulate commerce and anti-trust) and 29 U.S.C. § 1132(e)(1) (jurisdictional grant under ERISA); injunctive relief was sought pursuant to 28 U.S.C. § 2202 and Rule 65 of the Federal Rules of Civil Procedure. The district court granted appellants' motion to stay execution of its judgment pending this appeal.

### III

■ We must first consider the State of Connecticut's claim that only participants, beneficiaries or fiduciaries are empowered to institute an action for civil enforcement of ERISA in district court. 29 U.S.C. § 1132(e)(1) (1976). It argues that as an employer Stone & Webster had no standing under the statute to institute this action. Plaintiff responds that, even in a case where the preemptive federal law provides it with no right to relief, the doctrine of preemption nevertheless provides "arising under" jurisdiction. The district court agreed with this argument and, without discussing standing, held that jurisdiction exists under 28 U.S.C. § 1331.[3]

Under the aegis of a state statute plaintiff is being pursued by Connecticut to pay money which it asserts it does not owe. It instituted this declaratory judgment action seeking to have its rights declared vis-a-vis the Connecticut statute in light of ERISA. The action was brought pursuant to 28 U.S.C. § 2201 (1976 & Supp. IV 1980) which insofar as here pertinent provides: "In a

case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Since Stone & Webster is an employer whose interests were considered and protected by Congress when ERISA was enacted, see H.R.Rep. No. 93–533, 93d Cong., 1st Sess., reprinted in [1974] U.S.Code Cong. & Ad. News 4639, it is an interested party directly affected by the Connecticut statute which requires it to make payments on behalf of Ilsley into the Fund. Unquestionably, therefore, plaintiff has standing to litigate its claim that ERISA shields it from the operative effect of that state statute.

More troublesome, however, is whether federal question jurisdiction exists in view of the lack of jurisdiction afforded to plaintiff as an employer by ERISA under 29 U.S.C. § 1132(e)(1). We turn to 28 U.S.C. § 1331(a) to see whether the necessary jurisdiction can there be found. Whether section 1331 supplies jurisdiction for Stone & Webster's suit is an interesting question that has divided the courts and puzzled the commentators. There is no doubt that determining whether ERISA preempts Connecticut's statute is a federal question in the classic sense that Stone & Webster's claim prevails under its construction of federal law and loses under defendant's construction. See Osborn v. Bank of the United States, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824).

What is in doubt is whether this federal question provides an occasion for invoking the federal question jurisdiction of the district court. The reason for doubt is because plaintiff's claim is one for declaratory judg-

2. Abstention, as urged in the amicus brief, under the doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 639 (1971), is not appropriately invoked in a preemption case. Marshall v. Chase Manhattan Bank, 558 F.2d 680, 683 84 (2d Cir. 1977).

3. While an argument could be raised that this controversy could have been litigated in the Connecticut state courts, nevertheless, state court jurisdiction would not displace federal

court jurisdiction in this case. Had Stone & Webster been named as defendant in a state action brought to enforce the provisions of the Connecticut statute, it would not have been barred from its present action in district court. The federal action would in that case simply seek a declaratory judgment that the putative state action was barred by ERISA. As such it would have been properly instituted.

ment. That circumstance creates a tension between two doctrines: (1) The declaratory judgment act is procedural only. Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 (1976 & Supp. IV 1980), Congress enlarged the range of remedies available to litigants in federal courts, but it did not extend the jurisdiction of the district courts. *See Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *Great Lakes Co. v. Huffman,* 319 U.S. 293, 300, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407 (1943); *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937). To permit a declaratory plaintiff to invoke federal jurisdiction to assert the validity of his federal defense, would thereby augment the availability of federal jurisdiction. Historically, jurisdiction may not be predicated upon a federal defense. *See Louisville & Nashville R. Co. v. Mottley,* 210 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). (2) The old rule that the existence of a federal question is to be determined from the face of a well-pleaded complaint, *Gold-Washing & Water Co. v. Keyes,* 96 U.S. 199, 24 L.Ed. 656 (1877), would seem to be satisfied whenever a declaratory plaintiff asserts a federal ground of nonliability. Professor Wright sees two possible approaches to the problem: the broad view that the adequacy of the declaratory complaint to invoke federal jurisdiction is to be tested by the face of the complaint (which would permit an expanded use of federal jurisdiction) or the narrow view that a declaratory defendant's complaint may be entertained only if the coercive action for affirmative relief, which the declaratory plaintiff is anticipating, could have been brought in federal court. Wright, *Federal Courts* 70 (3d ed. 1976). Wright and Miller assert, perhaps too confidently, that the narrow view is "the law today." 10 *Federal Practice and Procedure* § 2767, p. 849 (1973).

The Supreme Court has expressed the view, although only in dictum, that a declaratory judgment plaintiff who asserts that defendant threatens to burden plaintiff's conduct of interstate commerce has only a defense that probably does not provide a basis for invoking federal question jurisdiction. *Public Service Commission v. Wycoff,* 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952). Some courts have applied that dictum, *e.g., Allegheny Airlines, Inc. v. Pennsylvania Public Utilities Commission,* 465 F.2d 237 (3d Cir. 1972); *Home Federal Savings & Loan Ass'n v. Insurance Dep't of Iowa,* 571 F.2d 423 (8th Cir. 1978), while others have carefully confined *Wycoff* to its context of a dispute not yet justiciable and upheld section 1331 jurisdiction for a declaratory judgment plaintiff asserting preemption, *e.g., Braniff International, Inc. v. Florida Public Service Commission,* 576 F.2d 1100 (5th Cir. 1978); *Rath Packing Co. v. Becker,* 530 F.2d 1295 (9th Cir. 1975). The problem stems from the rule of *Louisville & Nashville R. Co. v. Mottley, supra,* that a plaintiff's anticipation of a federal defense does not create federal question jurisdiction. In *Mottley* the plaintiff was claiming federal jurisdiction solely on the basis of a defense that *might* be asserted by the defendant railroad. But, as Professor Wright points out, *Federal Courts, supra,* at 71, the result might have been different in *Mottley* if the defendant railroad had come to federal court asserting its federal defense as the basis for a declaration of non-liability to the Mottleys' claim. In such a case, the federal defense is not speculative; it is being asserted.

Here not only is a right being asserted on the face of the complaint, but an injunction is also being affirmatively sought to prevent interference with that right. This claim raises federal question jurisdiction. *Ex parte Young,* 209 U.S. 123, 160, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908). Regardless of whether, as in *Wycoff,* the equitable considerations necessary to support the issuance of an injunction are sufficiently alleged, jurisdiction under § 1331(a) clearly exists since a declaratory judgment action may be entertained even where further relief is unavailable. 28 U.S.C. § 2201 (1976). Thus, the historical test in *Mottley* has been satisfied. The declaratory claim asserted is not merely a defense, but affirmative and coercive relief is sought by

way of an injunction. Note, *Federal Jurisdiction over Declaratory Suits Challenging State Action,* 79 Colum.L.Rev. 983 (1977).

Having discussed the historical test and examined plaintiff's complaint in its light, we hasten to observe that there is no single, simple test to determine "arising under" jurisdiction in a given case. It would be easy if a preemption case, like a bankruptcy, patent, copyright or trademark matter, had the benefit of a statute which confers jurisdiction on the district court in which case "arising under" jurisdiction is not in issue. Some guidance comes from our previous holding that a cause of action invokes federal jurisdiction where the complaint is for a remedy expressly granted by an Act of Congress, or where it presents a claim requiring construction of the Act. *T.B. Harms Co. v. Eliscu,* 339 F.2d 823, 827 (2d Cir. 1964), *cert. denied,* 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965). Plaintiff's claim here is not only one which originates from a federal statute, but is one whose vindication turns on preemption expressly contained in it. Under these circumstances a declaratory plaintiff can come into federal court asserting that preemption affords it insulation from a state-based claim. *See Gully v. First National Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936) (federal question jurisdiction exists when a right or an "immunity" created by federal law is an essential element of plaintiff's cause of action). Finally, we are satisfied that this case meets the many "arising under" tests [4] for federal jurisdiction, not the least of which is that pragmatic considerations make it eminently logical and sensible that the forum for such a dispute be the federal district court.

## IV

Section 514 of ERISA, 29 U.S.C. § 1144, provides that applicable provisions of ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." In order to determine whether Stone & Webster may be required to make payments to the Fund on Ilsley's behalf, we must decide the single substantive issue—whether § 31–51h of the General Statutes of Connecticut "relate[s] to" an employee benefit plan. If so, it is void under the Supremacy Clause contained in Article VI of the Constitution.

We view *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), as controlling. The threshold issue it poses is: what defines an employee benefit which once vested cannot, under ERISA, be forfeited. The answer is found, the Court tells us, in the arrangements made by the private parties creating the employee benefit plan. *Id.* at 511, 101 S.Ct.

---

**4.** Attempting to define an all inclusive test which will determine if a case "arises under" the Constitution, laws, or treaties of the United States is like the exercise performed by the daughters of Danaus, condemned for eternity, as they were, to draw water with a sieve. The test from which all the others have their genesis is one devised by Chief Justice Marshall in *Osborn v. Bank of the United States,* 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824) (for determining the scope of federal question jurisdiction under Article III); it is referred to as the "ingredient" test and holds that when an ingredient of the cause of action involves federal law, "arising under" jurisdiction may properly be invoked. Justice Holmes' classic rule states that "[a] suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). Under his view, if the cause of action was substantively created by federal law, it "arises under" that law and invokes federal jurisdiction. In *Gully v. First National Bank in Meridian,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), Justice Cardozo concluded that the decisive test was whether the *right* to be established was federal in nature. The mere fact that the *source of authority* to establish such a right takes its origins in the laws of the United States did not necessarily make the suit one that arises under those laws. *Id.* at 114, 57 S.Ct. at 98. The judicial quest for an immutable rule seems doomed never to succeed, for underlying federal question jurisdiction, as the commentators suggest, there exist innate concepts, broad and flexible in nature so as to make available what is perceived of as a necessary forum for the vindication of national interests. Mishkin, *The Federal "Question" in the District Courts,* 53 Colum.L.Rev. 157, 162, 165 (1953); C. Wright, *Handbook of The Law of the Federal Courts* 67 (1970). These national interests may not always be foreseen, and obviously they change over a period of time.

at 1900. Stone & Webster and the Union are parties to a collective bargaining agreement of which Ilsley is a beneficiary. That agreement provides for a welfare fund from which insurance benefits are paid to employees covered by the bargaining unit. No provision of either the Fund or the agreement requires continuing contributions by the employer when a former employee is receiving workers' compensation benefits. The response to the threshold question posed by *Alessi* must therefore be that the private parties in this case did not define Connecticut's continuing contribution requirement as a nonforfeitable benefit.

Congress has stated that the provisions of ERISA "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a) (1976). A state law "relate[s] to" an employee benefit plan and is subject to preemption whenever it "purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans." 29 U.S.C. § 1144(c)(2) (1976). In these provisions Congress clearly eliminated the threat of conflicting or inconsistent state and local regulation of employee benefit plans. Not only this literal language, but also its purpose, must be given force and effect. A reading of ERISA's legislative history reveals the broad sweep of its reach.

■ We acknowledge the concern of the State of Connecticut for its injured workers and their dependents. In Ilsley's case he will lose the broad comprehensive insurance coverage he previously had under the Fund's provisions. The indisputable fact remains that the Connecticut statute requires an employer to make a contribution to the Fund for a former employee—as such, a pension benefit—which was not bargained for or agreed to in the contract between the employer and the union. We conclude therefore that section 31–51h of the General Statutes of Connecticut constitutes a forbidden state encroachment on a private employee benefit plan. Its only purpose is to add an additional statutory requirement—the cost of which is to be borne by the employer—to a private employee benefit plan. Thus, the state statute relates to an employee benefit plan as defined by ERISA and must be construed as preempted by 29 U.S.C. § 1144(a).

V

Finally, we turn to appellants' arguments that the Connecticut statute is for one reason or another excepted from preemption. First, appellants contend that the state statute touches the benefit plan only as a "remote and peripheral" regulation. Our Court found the state regulation in *American Telephone & Telegraph Co. v. Merry,* 592 F.2d 118, 121 (2d Cir. 1979), to be so remote as to be "impliedly excepted from preempted state law relating 'to any employee benefit plan.'" *Merry* dealt with whether a husband's pension fund could be garnished by his wife seeking to enforce a state court judgment providing for her support. The ancient family law concepts of maintenance and support of a spouse and the use of a state court's process to uphold and enforce a spouse's rights were not thought to have been preempted by ERISA. Thus, the rationale expressed in *Merry* can scarcely serve as a precedent for defendants in this case.

Second, under 29 U.S.C. § 1144(a), benefit plans that are themselves exempted from ERISA coverage are excepted from preemption. On rehearing *Delta Air Lines, Inc. v. Kramarsky,* 666 F.2d 21, 25 (2d Cir. 1981), *vacating* 650 F.2d 1287 (2d Cir. 1981), *prob. juris. noted,* 456 U.S. 924, 102 S.Ct. 1968, 72 L.Ed.2d 439, (1982), in light of *Alessi* we reiterated the rule that, as instructed by the Supreme Court, *Alessi,* 451 U.S. at 523 n. 20, 101 S.Ct. at 1906 n.20, the only state laws which survive preemption are those relating to plans that are themselves exempted from ERISA. The Fund, which here provides the benefits, is by its own terms expressly subject to ERISA.

Third, appellants argue that § 31–51h was established solely to comply with the

state workers' compensation law or, alternatively, that its purpose is to regulate insurance; under either view of its purpose, appellants claim the statute is within one of the several categories to which ERISA's preemption does not apply. Excepted from ERISA coverage are plans "maintained *solely* for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws," 29 U.S.C. § 1003(b)(3) (1976) (emphasis supplied). Of course, the plan in this case, similar to the one in *Alessi,* is one broadly designed to serve employees' needs and resulted from collective bargaining and cannot be said to be maintained "solely" for the purpose of complying with Connecticut's laws. *See Delta Air Lines, Inc. v. Kramarsky,* 650 F.2d 1287, 1306 (2d Cir. 1981). ERISA also explicitly preserves state regulation of insurance, banking and securities, 29 U.S.C. § 1144(b)(2)(A) (1976). There is, however, no correlation between these fields and the Connecticut Workers' Compensation Law.

We recognize that the provisions of section 31-51h of the Connecticut General Statutes concern a matter within that state's police power. Nonetheless, following the rehearing in *Delta,* and in accord with *Alessi,* such law insofar as it affects employee benefit plans covered by ERISA is preempted by it, and is void under the Supremacy Clause.

Accordingly, the judgment enjoining appellants from enforcing this statute against Stone & Webster is affirmed.