**BROTHERHOOD OF LOCOMOTIVE ENGINEERS, an unincorporated labor organization, Plaintiff,**

v.

**INDUSTRIAL COMMISSION OF UTAH, ANTI-DISCRIMINATION DIVISION,**

and

**Union Pacific Railroad Company, a corporation,**

and

**Harvey Bert Jeppson, Intervenor, Defendants.**

Civ. No. C–84–02021W.

United States District Court, D. Utah, C.D.

March 5, 1985.

Dennis C. Farley, Salt Lake City, Utah, for Railroad.

Brian M. Barnard, Salt Lake City, Utah, for intervenor.

Stephen W. Cook, Midvale, Utah, Harold A. Ross, Cleveland, Ohio, for plaintiff.

Stephen G. Schwendiman, Asst. Atty. Gen., Salt Lake City, Utah, for defendant Industrial Com'n.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

Oral argument on plaintiff's and defendants' motions for summary judgment was heard on February 1, 1985. Stephen W. Cook appeared as counsel on behalf of Brotherhood of Locomotive Engineers ("BLE"). Defendant Union Pacific Railroad Company ("Union Pacific") was represented by Dennis C. Farley while Stephen G. Schwendiman represented defendant Industrial Commission of Utah, Anti-Discrimination Division ("Division"). Brian Barnard appeared as counsel on behalf of Harvey Bert Jeppson, intervenor. The court has read the memoranda submitted and various authorities cited therein and has considered carefully the arguments made orally. Now being fully advised, the court renders the following decision and order.

## I.

The parties stipulated to the facts for the purpose of disposing of the motions for summary judgment. Harvey Bert Jeppson worked as a locomotive engineer for Union Pacific from 1942 until 1984 and was a member of the Brotherhood of Locomotive Engineers, a railway labor organization. The BLE is the authorized collective bargaining representative for purposes of the Railway Labor Act for the craft of locomotive engineers in the employ of Union Pacific. On February 8, 1983, Mr. Jeppson turned 70 years old and continued working until September 10, 1984, when his seniority rights were terminated pursuant to Rule 115 of a collective bargaining agreement ("Agreement") between Union Pacific and

the BLE.[1] Rule 115 of the Agreement is part of a bona fide seniority system and states:

TERMINATION OF SENIORITY—AGE 70. The established seniority rights of locomotive engineers shall automatically terminate effective as of the date the locomotive engineer reaches the age of seventy (70) years. No person shall be employed as locomotive engineer after reaching seventy (70) years of age.

Rule 115 was promulgated under the Railway Labor Act, 45 U.S.C. §§ 151–188 (1976).

On October 4, 1984, Mr. Jeppson filed a charge of discrimination on the basis of age with the Utah Anti-Discrimination Division against the plaintiff BLE and the defendant Union Pacific. The Division, acting upon the charges of Mr. Jeppson, requested a legal opinion from the Utah Attorney General's Office interpreting Utah's Anti-Discrimination Act, Utah Code Ann. §§ 34–35–1 to 34–35–38 (Supp.1983), ("UADA"). The Utah Attorney General's Office provided an opinion on November 1, 1984, which concluded that "mandatory retirement even though pursuant to a 'bona fide employment plan,' as defined under federal law, based solely upon age is a discriminatory act under Utah law," . . .[2] On December 4, 1984, the Division issued its determination that there was reasonable cause to believe that the BLE had violated UADA. The Division stated:

Although federal age discrimination laws allow for mandatory retirement at age seventy (70), under the provisions of a bona fide seniority system, the State of Utah Anti-Discrimination Act of 1965, as amended, is more restrictive. Therefore, the issue is not whether the Respondent is observing the terms of a bona fide seniority system, but that mandatory retirement at *any* age over forty (40) is a violation of the Utah Act, even when a bona fide seniority system is being observed.

The Division is continuing to process the claims of Mr. Jeppson in accordance with Utah law.

The BLE moved for summary judgment, seeking declaratory and injunctive relief arguing that: (1) The Supremacy and Commerce clauses preclude the application of Utah's Age Discrimination laws to those 70 years of age and older; (2) the federal Age Discrimination in Employment Act preempts UADA as applied to those 70 and older; (3) the Railway Labor Act preempts section 34–35–6(1) Utah Code Ann. (1953), as amended, insofar as it attempts to regulate the terms and conditions of bona fide seniority plans a negotiated collective bargaining agreements; (4) UADA should be construed to permit bona fide seniority systems and bona fide employment benefit plans such as a retirement plan. Union Pacific incorporated the BLE arguments and authorities in its memorandum for summary judgment, reiterating that where retirement and seniority systems are negotiated in collective bargaining pursuant to the Railway Labor Act, there is an overriding federal interest which calls for the preemption of any state efforts to interfere with or regulate the terms of such agreements. Defendant Division moved for summary judgment contending that neither the Railway Labor Act nor the federal Age Discrimination in Employment Act preempt Utah's anti-discrimination law.

II.

These motions present two principal issues of law. First, is UADA to be construed to prohibit mandatory retirement based solely on age even when in compliance with a bona fide employment plan. Second, if UADA is interpreted in this manner, is it preempted by federal law or does it impermissibly burden interstate commerce. The court will consider each issue in turn.

1. In the railroad industry an engineer bids for jobs on the basis of seniority. Accordingly, the loss of one's seniority rights as a locomotive engineer effectively precludes one from working in that position.

2. An earlier opinion rendered July 19, 1983, by Mark A. Madsen, legal counsel to the Utah State Retirement offices advised that Rule 115 was enforceable under UADA.

A. *Utah Anti-discrimination Act (UADA)*

Title 34, Chapter 35, of the Utah Code Anno. (Supp.1983), is entitled the Anti-discrimination Act. Section 6 of that chapter describes discriminatory or unfair employment practices as well as permitted practices. Two subsections of Section 6 are at issue in the present case. Section 34–35–6(1) states in pertinent part:

Notwithstanding any statutory provision to the contrary, ..., no person shall be subject to termination or retirement from employment on the basis of age, except where differentiation is based on reasonable factors other than age, or where age is a bona fide occupational qualification reasonably necessary to the normal operation of a particular business.

Section 34–35–6(3) states:

It shall not be a discriminatory or unfair practice with respect to age to observe the terms of a bona fide seniority system or any bona fide employment benefit plan such as a retirement, pension, or insurance plan which is not a subterfuge to evade the purposes of this chapter except that no such employee benefit plan shall excuse the failure to hire any individual.

■ Although the language of a statute controls when it is sufficiently clear in its context, *Ernst and Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), *Nevada Power Co. v. Watt*, 711 F.2d 913 (10th Cir.1983), a court may interpret a statute when its terms are ambiguous. The language of subsections 1 and 3 appear to be subject to more than one interpretation as evidenced by the conflicting advice rendered by the state of Utah.[3] Under the principles of statutory construction, a court may consider legislative history in an attempt to ascertain the legislature's intent and clarify the statute's ambiguities. Such an endeavor in the present case is not particularly helpful, however. In many respects, UADA parallels the federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621 to 634 (Supp.1984) ("ADEA"). When enacted in 1967, ADEA protected persons between the ages of forty and sixty-five from arbitrary age discrimination. In 1978, ADEA's upper age limit was extended to 70. When enacted, the ADEA included within it a provision, § 623(f), similar to that of UADA's § 34–35–6(3) permitting the observation of a bona fide seniority system.[4] In response to the holding in *United Air Lines v. McMann*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977), permitting mandatory retirement before the normal age of 65 (now 70), Congress amended that provision, § 623(f) of ADEA, by adding the following:

[N]o such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 12(a) of this title (40 to 70 years of age) because of the age of such individual.

In 1979 the Utah legislature amended § 34–35–6(1) to include the subsection at issue here and to abolish the upper age limitation. Utah now has an uncapped age provision. The legislature, however, left intact § 34–35–6(3) which appears to allow mandatory retirement at any age if done according to a bona fide plan.

■ The transcript of the Utah Senate's debate when it amended the UADA in 1979 to include the part of subsection at issue here, provides little guidance in resolving the apparent conflict between subsections 1 and 3. Where legislative history does not shed clear light on the meaning of an ambiguous statute, the court is bound only to render a decision that is reasonable in light of the overall policy of the legislation under consideration. *Anderson v. Babb*, 632 F.2d 300, 308, (4th Cir.1980). Defendant Division contends that the lan-

---

**3.** *See supra,* footnote 2 and accompanying text.

**4.** 29 U.S.C. § 623(f)(2) stated:

It should not be unlawful for an employer, employment agency, or labor organization to observe the terms of a bona fide employment benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual...

guage of 34–35–6(1) overrides all other provisions of 34–35–6. Subsection 3 nonetheless retains meaning, according to the defendant, because it allows "employees to alter the seniority status of employees or benefit contributions if pursuant to a bona fide plan." The court rejects that interpretation of subsection 3. Union Pacific did alter the seniority status of Mr. Jeppson and that action was found by the Division to violate subsection 1. Moreover, it is a fundamental tenent of statutory construction that different portions of the same statute should be read and interpreted consistently with each other to avoid conflicts. *United States v. Stauffer Chemical Co.,* 684 F.2d 1174, 1184, (6th Cir.1982), *aff'd* 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388.

■ Accordingly, the court finds that subsections 1 and 3 can be read consistently by recognizing that UADA prohibits termination or retirement of employees on the basis of age *unless* the termination or retirement is accomplished pursuant to a bona fide seniority or retirement plan under subsection 3.[5] Subsection 3 is therefore a modifier of subsection 1 with regard to bona fide seniority systems. The terms "termination or retirement" are thereby distinguishable from the observation of a "bona fide seniority system." That interpretation is consistent with the overall statutory scheme of 34–35–6. Subsection 1 lists those employment practices which are discriminatory or unfair and includes provisions relating to age. Subsection 2 lists that which "shall not be a discriminatory or unfair labor practice." Subsection 3 states that which is not a discriminatory or unfair practice with respect to age.

■ Because subsections 1 and 3 are construed as being consistent with one another, the court finds that Rule 115 is enforceable under state law.

B. *Preemption and the Commerce Clause*

■ The court need not rely solely on its interpretation of UADA to find that Rule 115 is enforceable. The court finds alter-

natively that UADA as presently applied to alter the respective rights of parties under a collective bargaining agreement made pursuant to the Railway Labor Act has been preempted by that act and burdens impermissibly interstate commerce.

The Railway Labor Act 45 U.S.C. §§ 151–188 (1976) ("RLA") was enacted in 1926. Section 151a lists the purposes of the RLA which can be summarized as the facilitation of the collective bargaining process so as to avoid disruption of commerce. *See Russell v. National Mediation Bd.,* 714 F.2d 1332, 1342 (5th Cir.1983). The RLA regulates labor relations of interstate rail carriers and air carriers and generally permits the parties to collective bargaining to agree upon whatever terms are mutually satisfactory.

Union Pacific contends that the RLA preempts the application of UADA section 34–35–6(1) to override Rule 115 of the Agreement because a collective bargaining agreement made pursuant to the RLA has the "imprimature of the federal law" upon it. In addition, the comprehensive nature of the federal labor laws established under the RLA precludes state intervention.

■ The basic framework of analysis for questions of federal labor law preemption is set forth in *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). *See also Hasten v. Phillips Petroleum Co.,* 640 F.2d 274, 277 (10th Cir.1981). First, "[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate" are either protected or proscribed by federal law, then "due regard for the federal enactment requires that state jurisdiction must yield." *Garmon,* 359 U.S. at 244, 79 S.Ct. at 779. Second, even if a state law touches upon conduct arguably governed by the federal scheme, the state may nevertheless regulate that conduct if it is "a merely peripheral concern" of the federal law, or if it involves "interests so deeply rooted in local feeling and responsibility that, in the ab-

---

5. Because of § 623(f) of the ADEA, a bona fide plan could not affect the termination or retirement of an individual between the ages of 40 and 70.

sence of compelling congressional direction, [the court] could not infer that Congress had deprived the States of the power to act." *Id.* at 243–44, 79 S.Ct. at 779. Although the court must consider both the state's interests and the potential for interference with a federal scheme, it must do so against a background of decisions that has recognized the necessity for comprehensive national labor laws. As the Supreme Court has stated in *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 286, 91 S.Ct. 1909, 1917–18, 29 L.Ed.2d 473 (1971):

> A primary factor in this development [of a comprehensive national labor law] was the perceived incapacity of common-law courts and state legislatures, acting alone, to provide an informed and coherent basis for stabilizing labor relations conflict and for equitably and delineately structuring the balance of power among competing forces so as to further the common good.

Although the *Lockridge* case involved a jurisdictional dispute between state courts and the National Labor Relations Board, courts have recognized that a similar philosophical approach to preemption issues governs both the National Labor Relations Act and the RLA. *See Railroad Trainmen v. Terminal*, 394 U.S. 369, 383, 89 S.Ct. 1109, 1118, 22 L.Ed.2d 344 (1969). The United States Supreme Court examined the history of the RLA and found:

> ... The Federal government has determined that a uniform regulatory scheme is necessary to the operation of the national rail system. In particular, Congress long ago concluded that federal regulation of railroad labor relationship is necessary to prevent disruptions in vital rail service essential to the national economy.

*United Transp. Union v. Long Island R.R. Co.*, 455 U.S. 678, 688, 102 S.Ct. 1349, 1356, 71 L.Ed.2d 547 (1982).

As Union Pacific and the BLE point out, courts have recognized that a collective bargaining agreement made pursuant to the RLA has the imprimature of federal law upon it. *Railway Employees' Dept. v. Hanson*, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956), *California v. Taylor*, 353 U.S. 553, 77 S.Ct. 1037, 1 L.Ed.2d 1034 (1957). *See also, Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 526, 101 S.Ct. 1895, 1907, 68 L.Ed.2d 402 (1981). As the Division notes, that "imprimature" may not in itself be sufficient in this case to preempt UADA when as here the state statute does not conflict directly with a provision in the RLA as was the case in *Hanson* and *Taylor* but rather with an agreement made pursuant to the RLA. *See, Delta Air Lines v. Kramarsky*, 650 F.2d 1287, 1300 (2d Cir.1981), *vacated in part and rev'd*, 666 F.2d 21 (1981), *aff'd in part and vacated in part, Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).[6] We must therefore examine the conflict between the UADA and Rule 115 and the nature of the federal and state interests according to the *Garmon* framework while being "guided by respect for the separate spheres of governmental authority preserved in our federalist system." *Raybestos*, 451 U.S. at 522, 101 S.Ct. at 1905.

The RLA protects and promotes the collective bargaining process in an industry which by its very nature is involved in interstate commerce. The Union Pacific Railroad together with the companies it acquired in 1982, operates in 21 states.[7] Rule 115 is in effect in those various states and the engineers subject to it move across state lines in the course of their employment. Rule 115 allows for mandatory re-

---

**6.** Although the cited portion of *Kramarsky* was vacated, this court finds its reasoning helpful in the present case.

**7.** Union Pacific Railroad Company merged with *Missouri Pacific Railroad Company* and *Western Pacific Railroad Company* in 1982. Union Pacific operates in Washington, California, Ida-

ho, Montana, Oregon, Nevada, Utah, Wyoming, Colorado, Nebraska, Kansas, Iowa, and Missouri. Missouri Pacific operates in Colorado, Texas, Kansas, Nebraska, New Mexico, Oklahoma, Missouri, Illinois, Arkansas, Tennessee, Louisiana, and Mississippi. Western Pacific operates in California, Nevada, and Utah.

tirement at age 70 and is thereby in accord with the ADEA. Utah's UADA section 34–35–6(1), as presently applied, conflicts with Rule 115 as subsection 1 forbids mandatory retirement on the basis of age at any age. Although section 34–35–6(1) does not involve union organization or collective bargaining *per se, see Peabody Galion v. Dollar,* 666 F.2d 1309 (10th Cir.1981), it does have the possibility of conflicting with the RLA and could be viewed as intruding impermissibly on the collective bargaining process. *See Int'l Ass'n of Machinists v. Wisconsin Employment Relations Comm'n.,* 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976). Moreover, the unique nature of the railroad industry necessitates uniformity in agreements between the railroad company and its employees. A locomotive engineer whose ability to work is dependent on his seniority rights could be subjected to differing regulations concerning those rights as the train moved across state lines. Seniority systems and rosters which are multistate in nature would be difficult to administer. Such a result would undermine the uniformity in labor relations in the railway industry called for by Congress.

The Division, however, urges the court to consider the legitimacy and the deep rooted nature of the state's interests in forbidding discrimination. The Division maintains that Congress intended that ADEA set only minimum standards and that states are free to give their own citizens greater protection against age discrimination than is required under federal law. The State of Utah, it is claimed, is concerned about those citizens who will not be adequately protected financially if forced to retire before they are ready to do so. The Division notes that both ADEA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to 2000e–17 (1976) encourage states to eradicate all forms of discrimination. Moreover, nothing in the RLA addresses the problem of employment discrimination. *Colorado Anti-Discrimination Comm'n v. Continental Air Lines,* 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963).

■ We acknowledge Utah's interest in providing protection for its citizens against age discrimination. We do not find, however, that Utah's interest outweighs the pervasive federal interests at stake here. When as here, the terms governing termination and seniority rights have emerged from collective bargaining undertaken pursuant to the RLA and are in accord with federal anti-discrimination law, the federal interest in precluding state interference with labor management negotiations is paramount. *See Raybestos,* 451 U.S. at 504, 101 S.Ct. at 1895; *Teamsters v. Oliver,* 358 U.S. 283, 296, 79 S.Ct. 297, 304, 3 L.Ed.2d 312 (1959); *Hanson,* 351 U.S. at 232, 76 S.Ct. at 718 (1956).[8] "Preemption may be either expressed or implied, and 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" *Fidelity Federal Savings & Loan Assn. v. de la Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) (quoting *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983). Furthermore, another consideration adds to our conclusion that the UADA, section 34–35–6(1) as applied to override Rule 115 is preempted by the RLA. If Utah is permitted to alter the terms of seniority and termination agreements between Union Pacific and the BLE, interstate commerce will be impermissibly burdened. As noted above, Union Pacific operates in 21 states and Rule 115 is in force in those states. Permitting states to enforce their individual statutes to alter the terms of collective bargaining agreements made pursuant to the RLA would severely impair the uniform administration of railroad employee benefits. Labor relations would suffer. Fear of just that kind of chaotic disruption to interstate commerce prompted the enactment of the RLA.

We conclude that Rule 115 is enforceable under Utah Code Ann. §§ 34–35–6 to 34–

---

**8.** Because the court finds that the application of UADA to Rule 115 is preempted by the RLA, we do not need to consider whether ADEA preempts section 34–35–6(1) of UADA.

35–38 (Supp.1983). We also find that Utah Code Ann. § 34–35–6(1) (Supp.1983) is preempted by federal law insofar as it bears on collective bargaining agreements made pursuant to the Railway Labor Act. We find further that Utah Code Ann. § 34–35–6(1) as applied to override Rule 115 of the Agreement between Union Pacific Railroad and the Brotherhood of Locomotive Engineers is an impermissible burden on interstate commerce.

Accordingly,

IT IS HEREBY ORDERED as follows:

1. The Industrial Commission of Utah, Anti-Discrimination Division's motion for summary judgment is denied.

2. The Brotherhood of Locomotive Engineers and the Union Pacific Railroad's motions for summary judgment are granted.

3. Counsel for the Brotherhood of Locomotive Engineers should prepare a proposed order for injunctive and declaratory relief in accord with this memorandum decision.