**BROTHERHOOD OF LOCOMOTIVE ENGINEERS, Plaintiff,**

v.

**COMMONWEALTH OF MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION, et al., Defendants.**

**Civ. A. No. 88–699–Y.**

United States District Court, D. Massachusetts.

Sept. 16, 1988.

Paul F. Kelly, Segal, Roitman & Coleman, Boston, Mass., Harold A. Ross, Ross & Krauskaar, Cleveland, Ohio, for plaintiff.

James Shannon, Atty. Gen. Com. of Mass., Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

The defendant Commonwealth of Massachusetts Commission Against Discrimination (the "Commission") moves this Court to dismiss the instant action brought by the plaintiff Brotherhood of Locomotive Engineers (the "Brotherhood"). The Brotherhood seeks to enjoin adjudicatory proceedings at the Commission on a complaint of unlawful age discrimination brought pursuant to Mass.Gen.Laws ch. 151B. In the underlying matter, a locomotive engineer who was over seventy years of age has filed a complaint of age discrimination against the Brotherhood and the Boston and Maine Corporation arising from the termination of his employment upon attaining seventy years of age.

■ The Court's consideration of this case is guided by the Supreme Court's recent decision in *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). There, the Court applied the tenents of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) to a case, similar to this one, in which a private party sought to enjoin the proceedings of a state civil rights commission. The Supreme Court in *Dayton Christian Schools*, noting "that the *normal* thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions," 477 U.S. at 627, 106 S.Ct. at 2723 (quoting *Younger*, 401 U.S. at 45, 91 S.Ct. at 751) (emphasis in original), followed a three-step analysis in determining whether *Younger* abstention is proper vis-a-vis pending proceedings in a state agency: (1) does the federal plaintiff have a full and fair opportunity to litigate her constitutional claim?; (2) is the agency procedure judicial in nature?; and (3) do the state administrative proceedings vindicate important state interests? 477 U.S. at 627–29, 106 S.Ct. at 2723–24; *see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

This Court holds first that the Commission's proceedings are, in fact, judicial in nature, a proposition that does not seem to be seriously disputed by the Brotherhood. A "judicial inquiry" is one in which "the court is called upon to investigate, declare and enforce 'liabilities as they stand on present or past facts and under laws supposed already to exist.'" *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 477–78, 103 S.Ct. 1303, 1312, 75

L.Ed.2d 206 (1983) (quoting *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 [1908]). Similarly, Mass.Gen.Laws ch. 151B, sec. 3 authorizes the Commission "to receive, investigate and pass upon complaints of unlawful practices...." Mass.Gen.Laws Ann. ch. 151B, sec. 3 (West 1982).

Second, the Brotherhood will have a full and fair opportunity to litigate its constitutional concerns—in this case, preemption and Commerce Clause claims—in the state proceedings. As the Massachusetts Supreme Judicial Court has noted, the Commission is an agency fully capable of resolving constitutional issues, including pre-emption. *See, e.g., Massachusetts Elec. Co. v. Massachusetts Comm'n Against Discrimination*, 375 Mass. 160, 375 N.E.2d 1192 (1978) (recognizing that a preemption defense could and normally should be raised before the Commission itself). Moreover, it cannot be doubted that the courts of the Commonwealth, in reviewing any decision of the Commission, will give federal constitutional issues, including preemption, the closest scrutiny. *See, e.g., Massachusetts Elec. Co.*, 375 Mass. at 173–76, 375 N.E.2d 1192 (considering at length whether the sex discrimination component of Mass.Gen.Laws ch. 151B was preempted by federal law).[1]

1. The opinion in *Dayton Christian Schools* gives little guidance concerning whether analysis of the "full and fair opportunity" to litigate constitutional claims in the state agency is limited to a survey of the state statutory framework and the controlling decisions of the state's highest court, or whether some actual scrutiny of the state agency's operations is required. The thrust of *Dayton Christian Schools* appears to suggest the former so as to avoid excessive federal review of state adjudicatory determinations, 477 U.S. at 626–27, 106 S.Ct. at 2722–23, but the opinion also cites favorably decisions of the Ohio Civil Rights Commission apparently as evidence of its ability to deal with the First Amendment issue there presented. *Id.* at 629, 106 S.Ct. at 2724.

This Court concludes that, in the absence of a virtual breakdown in state agency operations, *see, e.g., Mattos v. Thompson*, 491 Pa. 385, 421 A.2d 190 (1980) (oppressive delays in mandatory arbitration under Pennsylvania's Health Care Services Malpractice Act constitute an impermissible burden on the state constitutional right to jury trial), the more cursory analysis limned in the text of this opinion is most faithful to the federal-state accommodation sought in *Dayton Christian Schools.* However, because *Dayton Christian Schools* is ambiguous on this point, because the Commission invites closer scrutiny by representing that it does in fact consider and rule on preemption issues, citing *Gill v. Delta Airlines*, 2 MDLR 1248 (1980) (rejecting a defense that Mass.Gen.Laws ch. 151B was preempted by ERISA), and because the outcome is the same though the route more difficult, this Court summarizes its reasoning should the more detailed analysis of actual state adjudication be required.

While it is recognized that the Commission plays an extraordinarily broad and vital role in eradicating discrimination in the Commonwealth, it must also be recognized that the chronic underfunding of this important state agency has severely hampered its ability to carry out its statutory mandate. This long-standing problem, *see* The State Advisory Board et al., Current Operations of the Massachusetts Commission Against Discrimination (February 17, 1982); R. Jordan, "More MCAD Action Needed," The Boston Globe, March 16, 1982, op. ed. page, is as current as the most recent headlines, "MCAD faces big cut in funds," The Boston Globe, July 4, 1988, at 21. The result is an agency markedly overextended and forced to resort to work-sharing arrangements with its federal counterpart simply to keep afloat. *See Hamel v. Prudential Insurance Co.*, 640 F.Supp. 103, 106–07 (D.Mass.1986). *See generally Isaac v. Harvard University*, 769 F.2d 817, 823–24 (1st Cir.1985). Indeed, this Court takes judicial notice, Fed.R.Evid. 201, that many civil rights and anti-discrimination attorneys seek to bypass the Commission altogether and go directly to the courts if the relief available even approaches comparability. Against this backdrop of overwhelming need and scant resources, review of a single, competently-executed 1980 Commission decision dealing with preemption issues does not convince this Court that the Brotherhood will, in actuality, have a full and fair opportunity to present thoroughly, and to have the Commission consider, its preemption arguments.

But what of it? If aggrieved, the Brotherhood can appeal to the Massachusetts Superior Court. Mass.Gen.Laws ch. 30A, sec. 14. Here, a somewhat different set of factors comes into play. The Massachusetts Superior Court is "the great trial court of the Commonwealth," *Pierce v. Dew*, 626 F.Supp. 386, 387 (D.Mass.1986); it may well be the best jury trial court in America today. Even so, Massachusetts is 48th among the 50 states in providing judges for its citizens, Agenda 90, Report of the Massachusetts Senate Ways and Means Committee (1987) (Table A), and this, coupled with the dearth of support staff and services available to its judges, *id.* at 12, 41, has caused this Court to refer to it as "dead last" among the several states in providing judicial services to its citizens. *Skinner v. Boston Housing Authority*, 690 F.Supp. 109, 112 n. 4 (D.Mass.1988). *But see* An Act Providing for the Improvement of the Courthouses of the

■ The closest question is whether an important state interest is implicated in this case. The Brotherhood argues that the federal Age Discrimination in Employment Act (the "Act") preempts the state age discrimination statute in that it expressly authorizes an age seventy retirement rule,[2]

29 U.S.C. sec. 631(a), and that the state therefore has no interest in this matter. The Brotherhood further argues that federal courts should never abstain in matters involving preemption because comity "is not strained when a federal court cuts off state proceedings that entrench upon the

Commonwealth, H.R. 5383, 1988 Reg.Sess., Mass.Gen.Laws ch. 203; An Act Providing for Additional Judges and Other Judicial Needs of the Commonwealth, H.R. 5960, 1988 Reg.Sess., Mass.Gen.Laws ch. 206 (both bills signed by the Governor on July 26, 1988 with Emergency Declarations attached may ameliorate this situation).

Still, these problems standing alone would not be enough to give rise to the conclusion that the Brotherhood will not have a full and fair opportunity to be heard on its preemption claims in the Massachusetts Superior Court were it not for the extraordinary deference, virtually unique among American jurisdictions, which Massachusetts courts are expected to pay to state agency interpretations of the organic statutes. *See, e.g., Attorney General v. Department of Pub. Utilities,* 392 Mass. 262, 263–64, 467 N.E.2d 72 (1984); *Purity Supreme, Inc. v. Attorney General,* 380 Mass. 762, 776, 407 N.E.2d 297 (1980); *Grocery Mfrs. of America, Inc. v. Department of Pub. Health,* 379 Mass. 70, 74–77, 393 N.E.2d 881 (1979); *Levy v. Board of Registration in Medicine,* 378 Mass. 519, 524–26, 392 N.E.2d 1036 (1979); *School Comm. of Wellesley v. Labor Relations Comm'n,* 376 Mass. 112, 116, 379 N.E.2d 1077 (1978); *Consolidated Cigar Corp. v. Department of Pub. Health,* 372 Mass. 844, 855, 364 N.E.2d 1202 (1977); *Finkelstein v. Board of Registration in Optometry,* 370 Mass. 476, 478, 349 N.E.2d 346 (1976); *Fioravanti v. State Racing Comm'n,* 6 Mass.App.Ct. 299, 302, 375 N.E.2d 722 (1978). This requirement of deference to agency action, when coupled with the enormous burdens under which the Justices of the Massachusetts Superior Court presently labor, leads this Court respectfully and regretfully to conclude that, if the Commission mis-analyzes the preemption issue, that error may—in the particular circumstances of this case—not be corrected in the Massachusetts Superior Court.

What then? The Brotherhood may appeal as of right to the Massachusetts Appeals Court and may seek direct or further appellate review from the Massachusetts Supreme Judicial Court. While these courts, especially the Massachusetts Appeals Court, suffer from the same lack of proper support services that plagues all the Massachusetts courts, the many distinguished Massachusetts appellate decisions dealing with preemption matters, *see, e.g., Tosti v. Ayik,* 386 Mass. 721, 437 N.E.2d 1062 (1982); *Massachusetts Elec. Co. v. Massachusetts Comm'n Against Discrimination,* 375 Mass. 160, 375 N.E.2d 1192 (1978); *Commonwealth v. Noffke,* 5 Mass. App.Ct. 496, 364 N.E.2d 1274 (1977) *rev'd,* 376 Mass. 127, 379 N.E.2d 1086 (1978), make clear

beyond question that the Brotherhood ultimately will have ample full and fair opportunity to explore every nuance of its position. True, in such a case the Brotherhood's transaction costs are markedly higher than they would be were the Commission fully funded and able to devote sufficient resources and time to the analysis of the Brotherhood's arguments. Under *Dayton Christian Schools,* however, the Brotherhood may not—on this ground alone—bypass the state adjudicatory processes altogether and rush directly into federal court. So long as the Brotherhood has the required "full and fair opportunity" to litigate its preemption claims somewhere along the line of Massachusetts adjudicatory processes, the Brotherhood's actual and comparative litigation costs are immaterial. The proper allocation of adjudicatory function under our federal system requires the Brotherhood—if it is generally dissatisfied by Massachusetts adjudication—to work cooperatively to improve the adjudicatory resources and support services available within the Commonwealth rather than abandon those processes for the federal forum.

Two final observations are in order. First, to develop adequately the analysis set out in this note, it is necessary to assume that the Brotherhood's contentions are meritorious. That assumption is made here solely for the purpose of discussion; this Court expresses no opinion whatsoever on the point. Second, the Court is sensible that it may be presumptuous for it to express itself in any way on the general adequacy of the performance of any other court of competent jurisdiction. The Court recognizes that it has no competence to sit in review of state court judgments. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 486, 103 S.Ct. 1303, 1317, 75 L.Ed.2d 706 (1983). This Court respectfully sets forth the analysis presented in this footnote solely because *Dayton Christian Schools* may require it. The concerns just noted, however, seem to favor the more direct, albeit truncated, analysis in the text of this opinion.

**2.** This proposition is itself dubious. *See Simpson v. Alaska State Comm'n for Human Rights,* 608 F.2d 1171, 1175 (9th Cir.1979) (adopting the District Court's opinion holding that the Act did not preempt a state law that protected employees beyond the age established by the Act) (Kennedy, J.); *but see Brotherhood of Locomotive Engineers v. Indus. Comm'n of Utah,* 604 F.Supp. 1417, 1421–24 (D.Utah 1985) (finding a similar state law preempted).

federal domain." *Middle South Energy, Inc. v. Arkansas Public Serv. Comm'n,* 772 F.2d 404, 417 (8th Cir.1985), *cert. denied sub nom. Ratepayers Fight Back v. Middle South Energy, Inc.,* 474 U.S. 1102, 106 S.Ct. 884, 88 L.Ed.2d 919 (1986). While this Court acknowledges that several courts have hesitated or refused to abstain when preemption is asserted, *see, e.g., Kentucky West Virginia Gas Co. v. Pennsylvania Public Util. Comm'n,* 791 F.2d 1111, 1116–17 (3d Cir.1986); *Champion Int'l Corp. v. Brown,* 731 F.2d 1406, 1408–09 (9th Cir.1984); *Stone & Webster Engineering Corp. v. Ilsley,* 690 F.2d 323, 326 n. 2 (2d Cir.1982), *aff'd sub nom. Arcudi v. Stone & Webster Engineering Corp.,* 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983), this Court holds that abstention may still be appropriate in a preemption case. *See e.g., New Orleans Public Serv., Inc. v. City of New Orleans,* 798 F.2d 858, 861, 863–64 (5th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1910, 95 L.Ed.2d 515 (1987); *Aluminum Co. of America v. Utilities Comm'n of North Carolina,* 713 F.2d 1024, 1029–30 (4th Cir.1983), *cert. denied,* 465 U.S. 1052, 104 S.Ct. 1326, 79 L.Ed.2d 722 (1984); *Fore Way Express, Inc. v. Wisconsin Dep't of Indus., Labor and Human Relations,* 660 F.Supp. 310, 313 (E.D. Wisc.1987). This Court can discern no reason why, as in *Dayton Christian Schools,* a state agency may be thought fit to consider and rule on First Amendment issues, but not to consider or rule on an issue of preemption. Surely any imagined impulse that a state agency might have to expand the reach of state law to the detriment of federal constitutional law is present in both contexts, whether the constitutional basis involved is the First Amendment or the Supremacy Clause.

Accordingly, this Court abstains in this matter and GRANTS the motion of the Commission to dismiss.