915 F.2d 787
 59 USLW 2220, 12 Employee Benefits Ca 2472
 R.R. DONNELLEY & SONS CO., Plaintiff-Appellant,
v.
Judy PREVOST; Gerald Kolinsky, Compensation Commissioner,
Eighth District, State of Connecticut; John A. Arcudi,
Chairman, Board of Compensation Commissioners, State of
Connecticut; Clarine Nardi Riddle, Attorney General, State
of Connecticut, Defendants-Appellees,
United Automobile, Agricultural Implement and Aerospace
Workers, AFL-CIO and District 91, International
Association of Machinists and Aerospace
Workers, AFL-CIO, Amici Curiae.
O & G INDUSTRIES, INC., Plaintiff-Appellant,
v.
John ARCUDI, Edward F. Bradley, Gerald Kolinsky, Gregory
Gorman and Sharon Ferrillo Petrushonis,
Defendants-Appellees.
 Nos. 1527, 1528, Dockets 89-7467, 89-7481.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 5, 1989.
Decided Sept. 24, 1990.
 
 Daniel L. Fitzmaurice, Hartford (Thomas Z. Reicher, Felix J. Springer, Day, Berry & Howard, Hartford, Conn., of counsel), for plaintiff-appellant R.R. Donnelley & Sons Co.
 Thomas J. Joyce (Thomas M. Cloherty, Murtha, Cullina, Richter and Pinney, Hartford, Conn., of counsel), for plaintiff-appellant O & G Industries, Inc.
 Arnold B. Feigin, Asst. Atty. Gen. (Clarine Nardi Riddle, Atty. Gen., State of Conn., Hartford, Conn., of counsel), for defendants-appellees Gerald Kolinsky, John A. Arcudi, Clarine Nardi Riddle, and Edward F. Bradley.
 Bianca D. Mackey (Ashcraft & Gerel, Hartford, Conn., of counsel), for defendant-appellee Gregory Gorman.
 Geraldine Battistoli, Westbrook, Conn., for defendant-appellee Judy Prevost.
 Lindalea P. Ludwick (Sklarz & Early, New Haven, Conn., of counsel), for defendant-appellee Sharon Ferrillo Petrushonis.
 Before NEWMAN, PRATT, and MAHONEY, Circuit Judges.
 MAHONEY, Circuit Judge:
 
 
 1
 This appeal is brought by plaintiffs-appellants R.R. Donnelley & Sons Co. ("Donnelley") and O & G Industries, Inc. ("O & G") (collectively, the "Employers") from a judgment of the United States District Court for the District of Connecticut, Peter C. Dorsey, Judge. The Employers, entities maintaining employee welfare benefit plans within the meaning of section 3(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sec. 1002(1) (1988), brought actions seeking a declaration that Conn.Gen.Stat. Sec. 31-284b (1989), which requires Connecticut employers to continue equivalent accident and health insurance and life insurance coverage, or welfare fund payments, for employees eligible to receive workers compensation,[1] is preempted by ERISA.
 
 
 2
 The district court was thus required to construe section 514(a) of ERISA, 29 U.S.C. Sec. 1144(a) (1988), which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."[2] The court concluded that although section 31-284b related to employee benefit plans of the Employers described in 29 U.S.C. Sec. 1003(a) (1988), those plans were exempt under 29 U.S.C. Sec. 1003(b)(3) (1988), which exempts (inter alia ) plans "maintained solely for the purpose of complying with applicable workmen's compensation laws." The district court accordingly granted summary judgment to defendants-appellees.
 
 
 3
 We affirm.
 
 Background
 
 4
 Section 31-284b was enacted in response to Stone & Webster Eng'g Corp. v. Ilsley, 690 F.2d 323 (2d Cir.1982), aff'd mem. sub nom. Arcudi v. Stone & Webster Eng'g Corp., 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983), which declared Conn.Gen.Stat. Sec. 31-51h,[3] a predecessor of section 31-284b, preempted by ERISA. In Stone, we concluded that former section 31-51h related to plans described in section 1003(a) that were not exempt under section 1003(b). On the latter point, we concluded that the "broadly designed" employer plans at issue were not "maintained solely" to comply with applicable workmen's compensation laws within the meaning of section 1003(b)(3). Stone, 690 F.2d at 330.
 
 
 5
 The Connecticut legislature subsequently replaced section 31-51h with section 31-284b in an effort to take advantage of the section 1003(b)(3) exception. Unlike former section 31-51h, section 31-284b is included in the workers' compensation chapter of the Connecticut General Statutes. More significantly, as will become apparent, subsection (b) of section 31-284b authorizes alternative methods of compliance with the continuation of benefits mandated by subsection (a): (1) insuring the liability, (2) creating a new "injured employee's plan" as an extension of an existing plan, (3) self insurance, or (4) any combination of the above methods. In addition, subsection (c) thereof allows an employer, in the case of an employee welfare fund, to make appropriate payments to the fund to continue the required benefits.
 
 
 6
 The actions brought by Donnelley and O & G test the design of the new statute. The events which led to this litigation are described below.
 
 
 7
 A. Donnelley.
 
 
 8
 Donnelley, a Delaware Corporation with its principal place of business in Chicago, Illinois, conducts business in Connecticut at its Old Saybrook Manufacturing Division in Old Saybrook, Connecticut. Donnelley provides group term life insurance and health and dental benefits to eligible employees and their dependents through employee welfare benefit plans within the meaning of 29 U.S.C. Sec. 1002(1) (1988).
 
 
 9
 Donnelley's employment policies provide, in relevant part, that:
 
 
 10
 An employee having a continuous absence due to illness, injury or plant accident will be retained in an active status for two years or a period equivalent to the employee's total length of service from the last date hired to the first day of absence, whichever is less.
 
 
 11
 If an employee returns to work and sustains a recurring absence, the recurring absence will be added to the prior absence without credit for the interim return to work for the purpose of [the above paragraph], unless the employee performed in a full time assigned position for ninety consecutive calendar days or the recurring absence was due to an unrelated disability.
 
 
 12
 Upon the termination of their active status, separated employees may, under certain conditions, convert or extend their life, health or dental coverage at their own expense.
 
 
 13
 Defendant Judy Prevost, a Connecticut resident, began working for Donnelley in May 1983. At some time thereafter, Prevost suffered work-related injuries which resulted in her absence from work from May 1, 1986 to May 25, 1988, except for a brief period in February 1987 when she returned to work. Throughout this period and thereafter, Prevost was receiving or was eligible to receive workers' compensation payments from Donnelley pursuant to Connecticut law.
 
 
 14
 Until May 25, 1988, Donnelley maintained Prevost in active status, in accordance with the policies quoted hereinabove, and continued to provide her with life insurance and health and dental benefits. By letter dated May 2, 1988, however, Donnelley advised Prevost that her active status with Donnelley would be terminated on May 25, 1988 if she did not return to work prior to that date. That same letter advised Prevost that she could convert her life insurance coverage to an individual policy at her own expense. She was subsequently advised of her right to continue health and dental insurance at her own expense.
 
 
 15
 Donnelley terminated Prevost's dental benefits on May 25, 1988, health benefits on June 25, 1988, and life insurance coverage on June 26, 1988. By letter to Donnelley dated May 19, 1988, defendant Gerald Kolinsky, a compensation commissioner of the State of Connecticut, advised Donnelley that section 31-284b "requires an employer to continue to provide to an injured employee continuing coverage for group accident and health insurance or life insurance coverage while the employee is eligible to receive or is receiving workers' compensation payments."
 
 
 16
 Donnelley then filed suit in the United States District Court for the District of Connecticut, seeking injunctive relief and a declaration that section 31-284b is preempted by section 514(a) of ERISA, 29 U.S.C. Sec. 1144(a) (1988). The case was later consolidated with a similar action brought by O & G, described below.
 
 
 17
 B. O & G.
 
 
 18
 O & G is a Connecticut corporation with its principal place of business in Torrington, Connecticut. O & G is engaged in the construction business in Connecticut and other states, and is a member of the Associated General Contractors of Connecticut, Inc. (the "AGC"). The AGC negotiates on behalf of its members a collective bargaining agreement (the "Agreement") with the Connecticut Laborers District Council (the "Laborers").
 
 
 19
 As required by the Agreement, O & G contributed a predetermined amount of money for each hour worked by its employees to, inter alia, the Connecticut Laborers Health Fund (the "Health Fund"), an employee welfare benefit plan within the meaning of 29 U.S.C. Sec. 1002(1) (1988) that provides covered employees with medical, life, accidental death and dismemberment, and disability benefits.
 
 
 20
 Defendant Sharon Ferrillo Petrushonis was first employed by O & G on September 26, 1983. On December 20, 1984, she was injured in the course of her employment with O & G. Defendant Gregory Gorman was first employed by O & G on September 17, 1986. He was injured in the course of that employment on October 14, 1986. Both injured employees were eligible for workers' compensation.
 
 
 21
 O & G did not make payments to the Health Fund on behalf of Petrushonis and Gorman while they were receiving workers' compensation, since this was not required by the Agreement or the trust agreement establishing the Health Fund. On March 16, 1988, however, defendant Kolinsky ordered O & G to comply with section 31-284b with respect to Petrushonis. Gorman sought a similar determination. His application was pending before the Connecticut authorities when the record for this appeal was closed.
 
 
 22
 On July 1, 1988, O & G filed suit in the United States District Court for the District of Connecticut seeking injunctive relief and a declaration that section 31-284b is preempted by section 514(a) of ERISA, 29 U.S.C. Sec. 1144(a) (1988). After the Donnelley and O & G actions were consolidated, all parties filed cross-motions for summary judgment.
 
 
 23
 On April 12, 1989, the district court rendered summary judgment for the defendants, ruling that Section 31-284b relates to employee benefit plans that are described in 29 U.S.C. Sec. 1003(a) (1988) but are exempted from preemption by section 1003(b)(3).
 
 
 24
 This appeal followed.
 
 Discussion
 
 25
 The issues here, as in Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), a case upon which we ultimately rely for our decision herein, "are whether [section 31-284b] 'relate[s] to' employee benefit plans within the meaning of Sec. 514(a), ... and, if so, whether any exception in ERISA saves [section 31-284b] from pre-emption." Id. at 96, 103 S.Ct. at 2899.
 
 
 26
 A. Relationship to Employee Benefit Plans.
 
 
 27
 Courts have recognized that section 514(a) of ERISA was "designed to have a sweeping preemptive effect in the employee benefit plan field." American Progressive Life and Health Ins. Co. v. Corcoran, 715 F.2d 784, 786 (2d Cir.1983); see Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208, 1215 (8th Cir.), cert. denied, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981). "[T]he express pre-emption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.' " Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45-46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987) (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)). Accordingly, section 514 was "intended to preempt all state laws that relate to employee benefit plans and not just state laws which purport to regulate an area expressly covered by ERISA." Wadsworth v. Whaland, 562 F.2d 70, 77 (1st Cir.1977), cert. denied, 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978); see Landro v. Glendenning Motorways, Inc., 625 F.2d 1344, 1351 (8th Cir.1980).
 
 
 28
 "The Court has also recognized, however, that Congress, in seeking to preempt all state laws that 'relate to' employee benefit plans, could not possibly have meant to preempt all laws having any impact on such plans, no matter how small or how tangential." Aetna Life Ins. Co. v. Borges, 869 F.2d 142, 145 (2d Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989). Indeed, "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." Shaw, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21.
 
 
 29
 Applying these principles here, we have little difficulty in concluding that section 31-284b "relate[s] to" employee benefit plans within the meaning of 29 U.S.C. Sec. 1144(a) (1988). Indeed, this conclusion is virtually compelled by our ruling in Stone regarding the predecessor provision, former section 31-51h. We said in Stone:
 
 
 30
 We conclude ... that section 31-51h of the General Statutes of Connecticut constitutes a forbidden state encroachment on a private employee benefit plan. Its only purpose is to add an additional statutory requirement--the cost of which is to be borne by the employer--to a private employee benefit plan. Thus, the state statute relates to an employee benefit plan as defined by ERISA and must be construed as preempted by 29 U.S.C. Sec. 1144(a).
 
 
 31
 690 F.2d at 329.
 
 
 32
 It is clear that section 31-284b has precisely the same impact upon private employee benefit plans that we discerned former section 31-51h to have in Stone. The question remains, however, whether section 31-284b is saved from preemption by 29 U.S.C. Sec. 1003(b)(3) (1988). We now address that issue.
 
 
 33
 B. The Section 1003(b)(3) Exemption.
 
 
 34
 In Stone, as here, the State of Connecticut contended that section 1003(b)(3) precluded preemption. We rejected that contention, stating:
 
 
 35
 Excepted from ERISA coverage are plans "maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws," 29 U.S.C. Sec. 1003(b)(3) (1976) (emphasis supplied). Of course, the plan in this case, similar to the one in Alessi, is one broadly designed to serve employees' needs and resulted from collective bargaining and cannot be said to be maintained "solely" for the purpose of complying with Connecticut's laws. See Delta Air Lines, Inc. v. Kramarsky, 650 F.2d 1287, 1306 (2d Cir.1981).
 
 
 36
 Stone, 690 F.2d at 330.
 
 
 37
 In Alessi, the Supreme Court concluded that section 514(a) of ERISA preempted a provision of New Jersey law that disallowed the reduction of pension benefits by workmens' compensation payments. The court reasoned that the statute "relate[d] to" pension plans governed by ERISA "because it eliminates one method for calculating pension benefits--integration--that is permitted by federal law." 451 U.S. at 524, 101 S.Ct. at 1907. More to the present point, the Court also briefly considered in Alessi the question of section 1003(b)(3) exemption, rejecting a claim by the plaintiffs-retirees that this exemption should be applied "generally to plans governed by state workers' compensation laws." 451 U.S. at 523 n. 20, 101 S.Ct. at 1906 n. 20. In doing so, the Court said:
 
 
 38
 The only relevant state laws, or portions thereof, that survive this preemption provision are those relating to plans that are themselves exempted from ERISA's scope. And the relevant exemption from ERISA's coverage--for plans maintained solely for compliance with state workers' compensation laws--has no bearing on the plans involved here, which more broadly serve employee needs as a result of collective bargaining. As retirees do not, and cannot, claim that the plans involved here are free from ERISA's coverage, they cannot claim the exception to preemption restricted to laws governing such exempted plans.
 
 
 39
 Id.
 
 
 40
 In ruling the section 1003(b)(3) exemption inapplicable, Stone also relied upon Delta Air Lines v. Kramarsky, 650 F.2d 1287, 1306 (2d Cir.), modified, 666 F.2d 21 (2d Cir.1981), aff'd in part, vacated in part sub nom. Shaw v. Delta Air Lines, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), on remand, 725 F.2d 146 (2d Cir.1983). Kramarsky, like Alessi, concluded that section 1003(b)(3) is inapplicable to "voluntary programs [that] are typically part of a complex benefits scheme established through collective bargaining." Kramarsky, 650 F.2d at 1306.
 
 
 41
 Later developments in the Kramarsky litigation, occurring subsequent to our decision in Stone, bear critically upon the preemption issue in the instant case. The issue in Kramarsky was whether ERISA preempted two New York statutes: N.Y.Exec. Law Sec. 296 (McKinney 1972 & Supp.1980-81), a provision of the state's Human Rights Law, and N.Y. Work.Comp.Law Sec. 205(3) (McKinney Supp.1980-81), a provision of the state's Disability Benefits Law ("DBL") that required employers to provide at least eight weeks of coverage for pregnancy-related disability. Only the consideration of the DBL provision in the Kramarsky litigation is pertinent to the exemption issue in the instant case.[4]
 
 
 42
 As stated above, we rejected the state's contention in Kramarsky that the DBL provision was saved from preemption by section 1003(b)(3). See 650 F.2d at 1303-07. On review, the Supreme Court agreed that section 1003(b)(3) generally does not exempt disability benefit provisions that are included in broader plans, stating:
 
 
 43
 Sec. [1003](b)(3) excludes "plans," not portions of plans, from ERISA coverage; those portions of the [employers'] multibenefit plans maintained to comply with the Disability Benefits Law, therefore, are not exempt from ERISA and are not subject to state regulation. There is no reason to believe that Congress used the word "plan" in Sec. [1003](b) to refer to individual benefits offered by an employee benefit plan. To the contrary, Sec. [1003](b)(3)'s use of the word "solely" demonstrates that the purpose of the entire plan must be to comply with an applicable disability insurance law.
 
 
 44
 Shaw, 463 U.S. at 107, 103 S.Ct. at 2905.
 
 
 45
 Significantly, however, the Court added the following caveat:
 
 
 46
 This is not to say, however, that the [employers] are completely free to circumvent the Disability Benefits Law by adopting plans that combine disability benefits inferior to those required by that law with other types of benefits. Congress surely did not intend, at the same time it preserved the role of state disability laws, to make enforcement of those laws impossible. A state may require an employer to maintain a disability plan complying with state law as a separate administrative unit. Such a plan would be exempt under Sec. [1003](b)(3). The fact that state law permits employers to meet their state-law obligations by including disability insurance benefits in a multibenefit ERISA plan, see N.Y.Work.Comp.Law App. Sec. 355.6 (McKinney Supp.1982-1983), does not make the state law wholly unenforceable as to employers who choose that option.
 
 
 47
 In other words, while the State may not require an employer to alter its ERISA plan, it may force the employer to choose between providing disability benefits in a separately administered plan and including the state-mandated benefits in its ERISA plan. If the State is not satisfied that the ERISA plan comports with the requirements of its disability insurance law, it may compel the employer to maintain a separate plan that does comply. The Court of Appeals erred, therefore, in holding that appellants are not at all free to enforce the Disability Benefits Law against those appellees that provide disability benefits as part of multibenefit plans.
 
 
 48
 Shaw, 463 U.S. at 108, 103 S.Ct. at 2906 (emphasis added).
 
 
 49
 In keeping with, and in apparent reliance upon, the above language in Shaw, the State of Connecticut allows an employer, under the second option in section 31-284b(b), to "creat[e] an injured employee's plan as an extension of any existing plan for working employees." Such a plan would constitute a "separate administrative unit" within the meaning of Shaw, designed "solely for the purpose of complying with [the] applicable workmen's compensation law[ ]" within the meaning of section 1003(b)(3).
 
 
 50
 Nor is Connecticut's position weakened by the other alternatives provided by section 31-284b(b) and (c). Shaw allows a state to "force [an] employer to choose between providing disability benefits in a separately administered plan and including the state-mandated benefits in its ERISA plan." Shaw, 463 U.S. at 108, 103 S.Ct. at 2906. Even assuming, therefore, that the alternatives to a separate plan provided in section 31-284b(b) and (c) can be deemed to fall within the confines of an employer's existing ERISA plan, the Connecticut provision would fall within the parameters of the Shaw ruling. A fortiori, if Shaw allows a state to authorize alternatives to a separate plan within an ERISA plan without losing the benefit of the section 1003(b)(3) exemption, it may surely authorize such alternatives outside the confines of an ERISA plan without doing so.
 
 
 51
 Accordingly, we agree with the district court that section 31-284b is not preempted by virtue of 29 U.S.C. Sec. 1144 (1988) because it falls within the exception to preemption provided by 29 U.S.C. Sec. 1003(b)(3) (1988).
 
 Conclusion
 
 52
 The judgment of the district court is affirmed.
 
 
 
 [1]
 Conn.Gen.Stat. Sec. 31-284b (1989) provides:
 Sec. 31-284b. Employer to continue insurance coverage or welfare fund payments for employees eligible to receive workers' compensation. Use of second injury fund. (a) In order to maintain, as nearly as possible, the income of employees who suffer employment-related injuries, any employer, as defined in section 31-275, who provides accident and health insurance or life insurance coverage for any employee or makes payments or contributions at the regular hourly or weekly rate for full-time employees to an employee welfare fund, as defined in section 31-53, shall provide to such employee equivalent insurance coverage or welfare fund payments or contributions while the employee is eligible to receive or is receiving workers' compensation payments pursuant to this chapter, or while the employee is receiving wages under a provision for sick leave payments for time lost due to an employment-related injury.
 (b) An employer may provide such equivalent accident and health or life insurance coverage of welfare fund payments or contributions by: (1) Insuring his full liability under this act in such stock or mutual companies or associations as are or may be authorized to take such risks in this state; (2) creating an injured employee's plan as an extension of any existing plan for working employees; (3) self-insurance; or (4) by such combination of the above-mentioned methods as he may choose.
 (c) In the case of an employee welfare fund, an employer may provide such equivalent protection by making payments or contributions for such hours of contributions established by the trustees of the employee welfare fund as necessary to maintain continuation of such insurance coverage when such amount is less than the amount of regular hourly or weekly contributions for full-time employees.
 (d) In any case where workers' compensation payments to an individual for total incapacity under the provisions of section 31-307 continue for more than one hundred four weeks, the cost of such accident and health insurance or life insurance coverage after the one hundred fourth week shall be paid out of the second injury fund in accordance with the provisions of section 31-349.
 (e) Such accident and health insurance coverage may include but shall not be limited to coverage provided by insurance or directly by the employer for the following health care services: Medical, surgical, dental, nursing and hospital care and treatment, drugs, diagnosis or treatment of mental conditions or alcoholism, and pregnancy and child care.
 
 
 [2]
 29 U.S.C. Sec. 1003 (1988) provides in pertinent part:
 (a) Except as provided in subsection (b) of this section and in sections 1051, 1081, and 1101 of this title, this subchapter [consisting of sections 1001-1168] shall apply to any employee benefit plan if it is established or maintained--
 (1) by any employer engaged in commerce or in any industry or activity affecting commerce....
 (b) The provisions of this subchapter shall not apply to any employee benefit plan if-- ...
 (3) such plan is maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws.
 
 
 [3]
 Former section 31-51h provided in pertinent part:
 No employer, private, municipal or state, shall cancel or withhold accident and health insurance or life insurance coverage of any employee or his dependents or cease to make payments or contributions at the regular hourly or weekly rate for full-time employees for each week of disability to an employee's welfare fund as defined in subsection (h) of section 31-53 while the employee is eligible to receive or is receiving workers' compensation payments pursuant to chapter 568 or is receiving a continuation of salary or wages under a provision for sick leave payments for time lost for on the job injury. Such accident and health insurance coverage may include but shall not be limited to coverage provided by insurance or directly by the employer for the following health care services: Medical, surgical, dental, nursing and hospital care and treatment, drugs, diagnosis or treatment of mental conditions or alcoholism, and pregnancy and child care.
 
 
 [4]
 The precedential value of the Kramarsky litigation for this case is not lessened by the fact that Kramarsky dealt with disability insurance laws, while we address workers' compensation laws herein. The section 1003(b)(3) exemption applies equivalently to both. See Kramarsky, 650 F.2d at 1305-06 & n. 27