**GREATER WASHINGTON BOARD OF TRADE, Appellant,**

**v.**

**DISTRICT OF COLUMBIA and Sharon Pratt Dixon, Appellees.**

No. 91–7061.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 22, 1991.

Decided Nov. 15, 1991.

Rehearing Denied Jan. 10, 1992.

---

Lawrence P. Postol, Washington, D.C., for appellant.

Donna M. Murasky, Asst. Corp. Counsel, Office of the Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief for appellees. Martin B. White, Counsel, Office of the Corp. Counsel, Washington, D.C., also entered an appearance, for appellees.

Before MIKVA, Chief Judge, WALD and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Appellant Greater Washington Board of Trade ("Board") is a nonprofit corporation that provides health insurance to its employees. The Board brought suit against appellees District of Columbia ("District") and Mayor Sharon Pratt Dixon seeking an injunction against the enforcement of a provision of the District of Columbia Workers' Compensation Equity Amendment Act of 1990 (D.C. Act 8–261) ("Equity Amendment Act" or "Act"), 37 D.C.Reg. 6890 (1990) (codified in scattered sections of D.C.CODE ANN. §§ 36–301 to –342.1 (Supp.

1991)). The Board claimed that section 2(c)(2) of the Equity Amendment Act was preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), § 514(a), 29 U.S.C. § 1144(a) (1988).[1] Appellees filed a motion to dismiss the complaint, arguing that the Act was not preempted by ERISA. On March 27, 1991, the district court granted appellees' motion to dismiss and denied the Board's motion for a preliminary injunction. *See Greater Wash. Bd. of Trade v. District of Columbia*, No. 91–00511 (D.D.C. Mar. 27, 1991) ("Memorandum Opinion") at 2. Because we find that the plain meaning of ERISA's preemption provision as well as the policies and purposes furthered by ERISA preemption compel the conclusion that section 2(c)(2) of the Equity Amendment Act is preempted, we reverse.

## I. BACKGROUND

### A. *The Equity Amendment Act*

The Equity Amendment Act became effective on March 6, 1991.[2] The Act amended portions of the District's workers' compensation law, D.C.CODE ANN. §§ 36–301 to –345 (1981 & Supp.1991), "in order to promote a fairer system of compensation, facilitate a more expeditious processing of claims, and establish a Commission to study the procedure and method of ratemaking for workers' compensation insurance," Equity Amendment Act preamble. Although the Act amended several sections of the workers' compensation law, the only

---

1. Appellant conceded at oral argument that it was no longer pressing the alternative argument that Congress never contemplated in 1974, when exempting workers' compensation plans from ERISA coverage, *see* 29 U.S.C. § 1003(b)(3) (1988), that such plans would include mandated health benefits. The Supreme Court found a similar argument with respect to "innovative" insurance contracts unpersuasive:

   The presumption is against pre-emption, and we are not inclined to read limitations into federal statutes in order to enlarge their preemptive scope. Further, there is no indication in the legislative history that Congress had such a distinction [between traditional and innovative insurance laws] in mind.

   *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 741, 105 S.Ct. 2380, 2390, 85 L.Ed.2d 728 (1985). We agree that "innovative" work-

ers' compensation plans should be treated the same as other "workers' compensation plans" within the meaning of ERISA.

2. Pursuant to the District of Columbia Self-Government and Governmental Reorganization Act, Pub.L. No. 93–198, § 602(c)(1), 87 Stat. 774, 814 (1973) (codified as amended at D.C.CODE ANN. § 1–233(c)(1) (1981)), the Council of the District of Columbia ("Council") is required to transmit an act, once it has been signed by the mayor, to Congress. The act will become law within thirty days unless Congress adopts a concurrent resolution disapproving it. The Council transmitted the Equity Amendment Act to Congress on January 11, 1991; no concurrent resolution having been passed, the Act became D.C.Law 8–198 on March 6, 1991. *See* Notice, 38 D.C.Reg. 1752 (1991).

relevant provision on this appeal is the following:

(1) Any employer who provides health insurance coverage for an employee shall provide health insurance coverage equivalent to the existing health insurance coverage of the employee while the employee receives or is eligible to receive workers' compensation benefits under this act.

....

(3) The provision of health insurance coverage shall not exceed 52 weeks and shall be at the same benefit level that the employee had at the time the employee received or was eligible to receive workers' compensation benefits.

Equity Amendment Act § 2(c)(2) (codified at D.C.CODE ANN. § 36–307(a–1)(1), (3) (Supp.1991)). By its terms, the Act requires employers to provide health benefits to employees eligible for workers' compensation benefits only if the employers already provide health benefits under a different plan.

The original version of the bill did not require employers to provide benefits to employees receiving workers' compensation; however, a substitute bill containing the provision for health benefits was passed by the Committee on Housing and Economic Development on July 6, 1990.[3] Section 2(c)(2) of the substitute bill read as follows:

Any employer who provides health insurance coverage for an employee shall *maintain the health insurance coverage of the employee* while the employee receives or is eligible to receive workers' compensation benefits under this act.

D.C.Bill 8–74 (as amended), § 2(c)(2) (1990) (emphasis added).[4] The Council amended the bill once again before it was passed. The portion of the substitute bill italicized above was replaced by the language eventually included in the Act:

Any employer who provides health insurance coverage for an employee shall *provide health insurance coverage equivalent to the existing health insurance coverage of the employee* while the employee receives or is eligible to receive workers' compensation benefits under this act.

Equity Amendment Act § 2(c)(2) (codified at D.C.CODE ANN. § 36–307(a–1)(1) (Supp. 1991)) (emphasis added).

### B. *ERISA*

ERISA was enacted in 1974 as a statutory scheme the primary purpose of which was to protect

the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

ERISA § 2(b) (codified at 29 U.S.C. § 1001(b) (1988)). ERISA defines an "employee benefit plan" as either an employee *welfare* benefit plan—which generally provides for some combination of medical, health, sickness, accident, disability, death, or unemployment benefits—or an employee *pension* benefit plan—which generally provides for retirement income. *Id.* § 3(1)–(3) (codified at 29 U.S.C. § 1002(1)–(3) (1988)).

Section 514(a) of ERISA expressly provides for the preemption of state law:

Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) and not exempt under section 4(b).

---

**3.** For the legislative history of the Act up to the point that it was reported to the Council, see COMM. ON HOUS. AND ECONOMIC DEV., REPORT TO THE COUNCIL OF THE DISTRICT OF COLUMBIA ON THE "DISTRICT OF COLUMBIA WORKERS' COMPENSATION EQUITY AMEND-MENT ACT OF 1990," BILL 8–74 (July 6, 1990) ("REPORT ON BILL 8–74").

**4.** The substitute bill is reprinted as Attachment F in REPORT ON BILL 8–74, *id.*

*Id.* § 514(a) (codified at 29 U.S.C. § 1144(a) (1988)).[5]

The scope of ERISA's coverage, and the exceptions to that coverage, are defined in section 4:

(a) Except as provided in subsection (b) and in sections 201, 301, and 401 [provisions defining coverage more narrowly for certain purposes], this title shall apply to any employee benefit plan if it is established or maintained—

(1) by any employer engaged in commerce or in any industry or activity affecting commerce; or

(2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or

(3) by both.

(b) The provisions of this title shall not apply to any employee benefit plan if—

. . . .

(3) such plan is maintained solely for the purpose of complying with applicable work[ers'] compensation laws or unemployment compensation or disability insurance laws.

*Id.* § 4 (codified at 29 U.S.C. § 1003 (1988)).

## II. Discussion

### A. *Preemption*

▬ Although the Supremacy Clause[6] invalidates state laws that "interfere with, or are contrary to the laws of Congress," *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 211, 6 L.Ed. 23 (1824), the exercise of federal supremacy is not lightly to be presumed. *See Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 522, 101 S.Ct. 1895, 1905–06,

68 L.Ed.2d 402 (1981); *New York State Dep't of Social Servs. v. Dublino,* 413 U.S. 405, 413, 93 S.Ct. 2507, 2513, 37 L.Ed.2d 688 (1973). In deciding whether a federal law preempts a state statute, the court's task "is to ascertain Congress' intent in enacting the federal statute at issue." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983). Preemption "may be either express or implied, and [it] 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" *Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta,* 458 U.S. 141, 152–53, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982) (quoting *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977)).

#### 1. Legislative History

Congress expressly provided in section 514(a) of ERISA for federal preemption of all state laws that "relate to" ERISA-covered plans. In favorably reporting the bill to the full Senate, the Committee on Labor and Public Welfare explained that

[b]ecause of the interstate character of employee benefit plans, the Committee believes it essential to provide for a uniform source of law in the areas of vesting, funding, insurance and portability standards, for evaluating fiduciary conduct, and for creating a single reporting and disclosure system in lieu of burdensome multiple reports.

S.Rep. No. 127, 93d Cong., 1st Sess. 35 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4838, 4871.[7] Similarly, the House Commit-

---

5. Subsection (b) of section 514 provides for various exceptions to the general preemption provision, the most significant of which is the so-called "saving" clause: "Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." ERISA § 514(b)(2)(A) (codified at 29 U.S.C. § 1144(b)(2)(A) (1988)). Subparagraph (B) is the so-called "deemer" clause, and it provides that no covered plan or trust created under such plan shall be deemed to be an insurance or banking company for purposes of any law of any state purporting to regulate insurance com-

panies, insurance contracts, banks, trust companies, or investment companies. *See id.* § 514(b)(2)(B) (codified at 29 U.S.C. § 1144(b)(2)(B) (1988)); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987).

6. U.S. Const. art. VI, cl. 2.

7. The legislative history of ERISA has been compiled and published in a three-volume set. Senate Report No. 127 is reprinted in 1 Subcomm. on Labor of the Senate Comm. on Labor and Pub. Welfare, 94th Cong., 2d Sess., Legislative History of the Employee Retirement Income Security Act of

tee on Education and Labor observed that "it is evident that the operations of employee benefit plans are increasingly interstate. The uniformity of decision which the Act is designed to foster will help administrators, fiduciaries and participants to predict the legality of proposed actions without the necessity of reference to varying laws." H.R.REP. No. 533, 93d Cong., 1st Sess. 12 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4650.[8]

Although both the House and Senate recognized the need for broad federal preemption in the area of employee benefit plans, the original bills contained preemption language significantly narrower than the version ultimately adopted by Congress. The earlier Senate version provided only for the preemption of all state laws that "relate to the subject matters regulated by this Act or the Welfare and Pension Plans Disclosure Act." H.R. 2 (Senate version), 93d Cong., 2d Sess. § 699(a) (1974).[9] The House version preempted only those laws that "relate to the reporting and disclosure responsibilities, and fiduciary responsibilities, of persons acting on behalf of any employee benefit plan to which part 1 applies." H.R. 2 (House version), 93d Cong., 2d Sess. § 514(a) (1974).[10]

The Conference Committee rejected both the House and Senate formulations in favor of the broader preemption language contained in the present statute, explaining that

> [u]nder the substitute, the provisions of title I are to supersede all State laws that relate to any employee benefit plan that is established by an employer engaged in or affecting interstate commerce or by an employee organization that represents employees engaged in or affecting interstate commerce. (How-

ever, following title I generally, preemption will not apply to government plans, church plans ... work[ers'] compensation plans, non-U.S. plans primarily for nonresident aliens, and so called "excess benefit plans.").

H.R. CONF. REP. No. 1280, 93rd Cong., 2d Sess. 383 (1974), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5162.[11] Representative Dent, ERISA's principal sponsor in the House, spoke in support of the Conference version of the bill:

> Finally, I wish to make note of what is to many the crowning achievement of this legislation, the reservation to Federal authority [of] the sole power to regulate the field of employee benefit plans. With the preemption of the field, we round out the protection afforded participants by eliminating the threat of conflicting and inconsistent State and local regulation.

120 CONG.REC. 29,197 (1974).[12]

### 2. Judicial Interpretation

■ Section 514(a) "is conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." *FMC Corp. v. Holliday*, — U.S. —, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). A law relates to an employee benefit plan, "in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900 (1983); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389 (1985). Under this common-sense meaning of the words, "a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifi-

---

1974, at 587, 621 (Comm.Print 1976) ("ERISA LEGISLATIVE HISTORY").

**8.** The House Report is also reprinted in 2 *id.* at 2348, 2359.

**9.** The Senate bill is reprinted in 3 ERISA LEGISLATIVE HISTORY, *supra* note 7, at 3599, 3820.

**10.** The House bill is reprinted in 3 ERISA LEGISLATIVE HISTORY, *supra* note 7, at 3898, 4057–58.

**11.** The Conference Report is also reprinted in 3 ERISA LEGISLATIVE HISTORY, *supra* note 7, at 4277, 4650.

**12.** The House floor debates are reprinted in 3 ERISA LEGISLATIVE HISTORY, *supra* note 7, at 4657, 4670; *see also* 120 CONG.REC. 29,933 (1974) (remarks of Senator Williams, principal sponsor of bill in Senate), *reprinted in* 3 ERISA LEGISLATIVE HISTORY, *supra* note 7, at 4731, 4745–46.

cally designed to affect such plans, or the effect is only indirect." *Ingersoll–Rand Co. v. McClendon*, —— U.S. ——, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990). While it is true that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan," *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21, the Supreme Court has concluded "that state laws which make 'reference to' ERISA plans are laws that 'relate to' those plans within the meaning of § 514(a)." *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 829, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988) (holding that state law relates to ERISA-covered plan when it provides that plans subject to the provisions of ERISA shall not be subject to the process of garnishment); *Metropolitan Life*, 471 U.S. at 739, 105 S.Ct. at 2389 (holding that state law relates to ERISA-covered plan when it requires all benefit plans to purchase specified mental-health benefits when they purchase a certain common insurance policy).[13]

A conclusion that a law "relates to" an ERISA-covered plan does not end the preemption inquiry, however. Once a court determines that section 514(a) has been satisfied, it must then check to see whether the law is nonetheless exempt from preemption under section 514(b). *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987). Only if the law does not qualify for an exemption from preemption under section 514(b) is it correct to conclude that the law which "relates to" an ERISA plan is preempted.[14]

**13.** We agree with the Fifth Circuit that the "*Shaw* 'exception'—that ERISA does not preempt state laws which affect benefit plans in a tenuous or peripheral manner—applies only to laws of general application; it does not protect state laws which specifically refer to ERISA benefit plans." *In re Dyke*, 943 F.2d 1435, 1448 (5th Cir.1991).

**14.** The categories of exempted laws under section 514(b) include state criminal laws and laws regulating insurance, banking, and securities. *See supra* note 5 (discussing "saving" clause); *see also infra* note 27 (discussing exemption for Hawaii's Prepaid Health Care Act).

## B. *The District Court's Decision*

The district court in this case concluded that the Equity Amendment Act "relates to" an ERISA-covered employee benefit plan "because benefits under the Act are set by reference to covered employee benefit plans." Memorandum Opinion at 3. Indeed, appellees do not dispute that the Equity Amendment Act "relates to" an ERISA-covered employee benefit plan.[15]

The district court implicitly recognized that the Equity Amendment Act relates, in fact, to two different plans: First, the Act "relates to" an ERISA–covered plan by requiring that the new benefits be "equivalent" to those already provided under an existing covered plan and by defining the employers who are obliged to provide the new benefits as those who already provide benefits under a covered plan. Second, by requiring new benefits to be provided to employees who have been injured on the job, the Act "relates to" a workers' compensation plan that is, by virtue of the exemption for such plans under section 4(b)(3), exempt from ERISA coverage. So, the Act relates both to an ERISA-covered plan and to a plan that is exempt from ERISA coverage.

■ The district court relied on *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), for the argument that because the Act related to a plan that was exempt from ERISA coverage, it was saved from preemption. In *Shaw*, the Court considered whether New York's Disability Benefits Law was preempted by ERISA.[16] The Court found

**15.** *See* Brief for Appellees (filed Sept. 6, 1991) at 19–20.

**16.** The 1983 version of the Disability Benefits Law provided, in pertinent part, that

[t]he weekly benefit which the disabled employee is entitled to receive for disability commencing on or after July first, nineteen hundred seventy-four shall be one-half of the employee's average weekly wage, but in no case shall such benefit exceed ninety-five dollars nor be less than twenty-dollars....

N.Y.WORK.COMP.LAW § 204.2 (McKinney 1982–83); *see Shaw*, 463 U.S. at 90 n. 4, 103 S.Ct. at 2896 n. 4. The Court also faced the question of

that where the law gives employers the option of establishing a separate benefit plan that is exempt from ERISA coverage under section 4(b), such a law would not be preempted.[17] But the state law in *Shaw* related only to an employee disability insurance plan. Relying on the earlier case of *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523 n. 20, 101 S.Ct. 1895, 1906 n. 20, 68 L.Ed.2d 402 (1981), the Court in *Shaw* concluded that where a law relates to a plan that is explicitly exempt from ERISA coverage under section 4(b)—as are all plans maintained solely to comply with disability insurance (and workers' compensation) laws—that law is not preempted. But in our case, as we have already observed, the Equity Amendment Act relates to two plans—one that is ERISA covered and one that is exempt from ERISA coverage. Had the Equity Amendment Act related only to the workers' compensation plan—had it, for example, made no reference to existing ERISA-covered plans and simply required all employers to provide specified minimum health benefits for employees receiving workers' compensation— it would clearly have survived preemption under the principles announced in *Shaw*.

The key issue in distinguishing *Shaw* from this case is that the Court in *Shaw* never found that the New York Disability Benefits Law related to an *ERISA-covered* plan. The Court did find that the Disability Benefits Law plainly related to an "employee benefit plan," *Shaw*, 463 U.S. at 106, 103 S.Ct. at 2904, but a law is preempted under section 514(a) only if it relates to an employee benefit plan *that is not exempt.* The plan to which the New York Disability Benefits Law related *was* exempt, so the law did not even qualify at the threshold for preemption.

*Shaw* would have governed this case had the Equity Amendment Act related only to the exempt plan; in that case, the Act would not have been preempted. But *Shaw* does not tell us why an Act that relates to an ERISA-covered plan can avoid preemption simply because it also relates to a plan exempt from ERISA coverage. Not only is there no authority in *Shaw* for this proposition, but it is entirely at odds with ERISA's statutory structure.

Once it is determined that a state law "relates to" an employee benefit plan covered by ERISA, the only escape from preemption is by way of the exemption provisions contained in section 514(b). But no one suggests that the Equity Amendment Act is a criminal law or one regulating insurance, banking, or securities. In purporting to find the source of the exemption to preemption in section 4(b), the district court has misconstrued the statutory scheme. Section 514(a) preempts all state laws that "relate to any employee benefit plan described in section 4(a) and not exempt under section 4(b)," ERISA § 514(a) (codified at 29 U.S.C. § 1144(a) (1988)). Section 4 is the section defining the scope of ERISA coverage. ERISA covers all employee benefit plans (as they are broadly defined in section 4(a)) with the limited exception of the plans explicitly enumerated in section 4(b). The phrase "and not exempt under section 4(b)" is not like the laws described in section 514(b); it is not an exemption to preemption but rather part of the definition of an ERISA-covered plan. In other words, when section 514(a) preempts all laws relating to "employee benefit plans described in section 4(a) and not exempt under section 4(b)," it means that it is preempting all laws relating to

whether ERISA preempted New York's Human Rights Law. The Court held that the Human Rights Law was unenforceable only insofar as it prohibited practices that were lawful under federal law. This aspect of the *Shaw* decision is not relevant to our consideration of the issues now before us.

**17.** The Court in *Shaw* recognized that "Congress surely did not intend, at the same time it preserved the role of state disability laws, to make

enforcement of those laws impossible. A State may require *an employer to maintain a disability* plan complying with state law as a separate administrative unit." *Shaw*, 463 U.S. at 108, 103 S.Ct. at 2905–06. The Court explained further that "while the State may not require an employer to alter its ERISA plan, it may force the employer to choose between providing disability benefits in a separately administered plan and including the state-mandated benefits in its ERISA plan." *Id.*

employee benefit plans covered by ERISA.[18]

In upholding the Equity Amendment Act, the district court reached the same conclusion as that of the Second Circuit in *R.R. Donnelley & Sons Co. v. Prevost*, 915 F.2d 787 (2d Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1415, 113 L.Ed.2d 468 (1991). In *Donnelley*, the court considered the question of whether a virtually identical state workers' compensation law was preempted under ERISA, and it held that the statute was not preempted.[19] The *Donnelley* court distinguished its prior decision in *Stone & Webster Engineering Corp. v. Ilsley*, 690 F.2d 323 (2d Cir.1982), *aff'd mem. sub nom. Arcudi v. Stone & Webster Engineering Corp.*, 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983), which had held that an earlier statute was preempted because it had required employers to extend coverage under their existing health plan to employees receiving work-

ers' compensation payments.[20] In contrast, the statute held not to be preempted in *Donnelley* permitted employers to provide the new coverage through separate plans administered independently from existing ERISA plans. In distinguishing *Stone & Webster*, the *Donnelley* court relied on *Shaw*.

But the Second Circuit focused on only half the story. By concentrating on how and in what ways the new workers' compensation plans would be exempt from ERISA coverage, the court failed to appreciate the fact that the Connecticut statute (like the Equity Amendment Act in this case) related to an ERISA-covered plan by tying the new benefits to existing benefits and by limiting the law's applicability to employers already providing benefits through ERISA plans.[21] The statute at issue in *Donnelley* is indistinguishable from the Equity Amendment Act.[22] Based on a plain reading of ERISA, we disagree

---

**18.** The phrase "employee benefit plan described in section 4(a) and not exempt under section 4(b)" is not unique to the preemption provision. Indeed, a variation of this phrase is used throughout ERISA whenever it defines with greater precision the scope of coverage for a particular part. *See, e.g.,* ERISA § 201 (codified at 29 U.S.C. § 1051 (1988)) ("This part [concerning participation and vesting of pension plans] shall apply to any employee benefit plan described in section 4(a) (and not exempted under section 4(b))"); *see also* ERISA § 301(a) (codified at 29 U.S.C. § 1081(a) (1988)) (concerning funding of pension plans); ERISA § 401(a) (codified at 29 U.S.C. § 1101(a) (1988)) (concerning fiduciary responsibility of plan administrators).

**19.** At issue in *Donnelley* was a Connecticut statute that required any employer

who provides accident and health insurance or life insurance coverage for any employee or makes payments or contributions at the regular hourly or weekly rate for full-time employees to an employee welfare fund ... [to] provide to such employee equivalent insurance coverage or welfare fund payments or contributions while the employee is eligible to receive or is receiving workers' compensation payments pursuant to this chapter....

CONN.GEN.STAT. § 31–284b(a) (1987); *see Donnelley*, 915 F.2d at 788 n. 1.

**20.** The statute held to be preempted in *Stone & Webster* provided that no employer

shall cancel or withhold accident and health insurance or life insurance coverage of any employee or his dependents or cease to make

payments or contributions at the regular hourly or weekly rate for full-time employees for each week of disability to an employee's welfare fund ... while the employee is eligible to receive or is receiving workers' compensation payments....

CONN.GEN.STAT. § 31–51h(a) (1981) (repealed 1982); *see Stone & Webster,* 690 F.2d at 324 n. 1; *see also Fixx v. United Mine Workers,* 645 F.Supp. 352 (S.D.W.Va.1986) (relying on *Stone & Webster* for conclusion that similar West Virginia disability medical insurance provision was preempted).

**21.** According to appellant's counsel, there is a question as to whether or not this argument was ever made to the Second Circuit in *Donnelley.* It does appear to have been raised in the petition for certiorari, which was denied on April 1, 1991, 111 S.Ct. 1415 (1991). *See* Transcript of Hearing on Pending Motions (D.D.C. Mar. 26, 1991) ("Transcript") at 14–16.

**22.** The record reflects the fact that the District modelled the Equity Amendment Act on the Connecticut statute which was held not to be preempted in *Donnelley:*

By the time the statute was passed in October, the Council—and you can see it in their records—was aware of *Donnelley*, at least the district court opinion in *Donnelley*, and changed the language from "maintaining benefits under the old plan," which would clearly have been pre-empted, to "providing benefits that are equal to the old plan."

*See* Transcript, *supra* note 21, at 9.

with the conclusion of the Second Circuit in *Donnelley* and conclude that the district court in this case erred in holding that the Equity Amendment Act was not preempted.

## C. Policy and Purpose

Not only do the plain meaning and structure of ERISA itself require the conclusion that the Equity Amendment Act is preempted, but this result also furthers the broad purposes of ERISA preemption. As the Supreme Court has explained,

> ERISA's pre-emption provision was prompted by recognition that employers establishing and maintaining employee benefit plans are faced with the task of coordinating complex administrative activities. A patchwork scheme of regulation would introduce considerable inefficiencies in benefit program operation, which might lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them.

*Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987).[23] This concern for minimizing the burden on the administration of ERISA-covered plans is reflected in the decision of the Court in *Shaw*, where it held that the Disability Benefits Law could not be enforced to the extent that it applied to benefits provided under a multibenefit plan: "An employer with employees in several States would find its plan subject to a different jurisdictional pattern of regulation in each State, depending on what benefits the State mandated under disability, work[ers'] compensation, and unemployment compensation laws." *Shaw*, 463 U.S. at 107, 103 S.Ct. at 2905.

Appellees insist that the Equity Amendment Act would not impose any of these administrative burdens because it allows for the provision of health benefits through a separate plan that employers could administer independently of their ERISA-covered plans. But appellees may underestimate the burden imposed. While it is certainly true that the Equity Amendment Act does not require employers to alter ERISA-covered plans, it explicitly ties the benefit levels of the workers' compensation plan to those of the ERISA-covered plan. In contrast to general state statutes that have only an incidental effect on the administration of ERISA plans, *see, e.g., Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) (holding that state's garnishment statute is not preempted by ERISA),[24] the Equity Amendment Act could have a serious impact on the administration and content of the ERISA-covered plan. The fact that the benefits to be provided to an employee receiving workers' compensation will be equivalent to the benefit levels provided while the employee is fully employed means that every time an employer considers changing the benefits under its ERISA-covered plan, it would have to consider the effect that such a change would have on its unique obligations to its District employees receiving workers' compensation.[25] In light of the additional financial burden associated with an increase in ERISA health benefits, an employer might choose to forego such an increase altogether. This could have a substantial effect on the administration of an ERISA-covered plan.

As the Court emphasized in *Fort Halifax*, the central concern of the ERISA pre-emption provision is to avoid subjecting ERISA-covered plans to various and differ-

---

**23.** *Fort Halifax* held that a Maine severance-pay statute was not preempted because it did not relate to an employee benefit *plan*. The Court determined that the Maine statute did not relate to a plan as described in section 4(a). It never reached the alternative argument that the plan was exempt from ERISA coverage under section 4(b). *See Fort Halifax*, 482 U.S. at 6 n. 4, 107 S.Ct. at 2215 n. 4.

**24.** *Mackey* stands for the proposition that "[t]he fact that collection might burden the adminis-

tration of a plan [does] not, by itself, compel pre-emption," *Ingersoll–Rand Co. v. McClendon*, 111 S.Ct. 478, 483 (1990).

**25.** For the purposes of the District's workers' compensation law, an "employer" is defined as "any individual, firm, association, or corporation ... using the service of another for pay within the District of Columbia." D.C.Code Ann. § 36–301(10) (1981).

ing state regulations. *Fort Halifax*, 482 U.S. at 9, 107 S.Ct. at 2216. In trying to avoid the obvious preemption problem with requiring employers to extend their existing ERISA plans to employees receiving workers' compensation, *see Stone & Webster Engineering Corp. v. Ilsley*, 690 F.2d 323 (2d Cir.1982), *aff'd mem. sub nom. Arcudi v. Stone & Webster Engineering Corp.*, 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983), appellees have now tried to regulate indirectly what they were forbidden to regulate directly. By requiring employers to take into account the effects that any general decisions about ERISA benefits would have on their responsibilities to their injured employees in the District of Columbia, the District has inevitably affected the administration of an ERISA plan.

But even if it were true that the administration of the ERISA plan would be unaffected by the operation of the Equity Amendment Act, ERISA does not only preempt laws which have such an administrative effect. In *Standard Oil Co. v. Agsalud*, 633 F.2d 760 (9th Cir.1980), *aff'd mem.*, 454 U.S. 801, 102 S.Ct. 79, 70 L.Ed.2d 75 (1981), the court affirmed the district court's holding that Hawaii's Prepaid Health Care Act ("Hawaii Act"), HAW. REV.STAT. §§ 393–1 to –51 (1976),[26] was preempted by ERISA:

> Appellants in the district court argued that since ERISA was concerned primarily with the administration of benefit plans, its provisions were not intended to prevent the operation of laws like the Hawaii Act pertaining principally to benefits rather than administration. There is, however, nothing in the statute to

support such a distinction between the state laws relating to benefits as opposed to administration.

*Agsalud*, 633 F.2d at 765.[27] The Court made the same observation in *Fort Halifax*:

> [S]tate laws requiring the payment of benefits also "relate to a[n] employee benefit plan" if they attempt to dictate what benefits shall be paid under a plan. To hold otherwise would create the prospect that plan administration would be subject to differing requirements regarding benefit eligibility and benefit levels— precisely the type of conflict that ERISA's pre-emption provision was intended to prevent.

*Fort Halifax*, 482 U.S. at 13 n. 8, 107 S.Ct. at 2218 n. 8.

It is, of course, evident that many different kinds of state laws may affect an employer's decisions concerning the scope and content of its benefit plans. Congress could have decided to preempt all state laws that "might conceivably have an effect upon" ERISA-covered employee benefit plans, but it chose to draw the line elsewhere. It required that the law specifically "relate to" the ERISA-covered plan— *i.e.*, that it have "a connection with or reference to such a plan." *Shaw*, 463 U.S. at 97, 103 S.Ct. at 2900. This provision may preempt more than appellees would like, but to the extent that it does, their argument is with Congress and not with us.

### III. CONCLUSION

For the reasons stated above, the decision of the district court is reversed, and

---

**26.** The Hawaii Act requires employers in that state to provide their employees with a comprehensive health care plan. The state argued that ERISA only preempts laws purporting to regulate private *voluntary* benefit plans. Because the Hawaii Act required employers to provide benefits, the state contended that the plans were beyond ERISA's scope. The Ninth Circuit rejected this argument, holding that "[t]he plans envisioned under the Hawaii statute are ... not rendered outside the definition of employee welfare benefit plans simply because Hawaii has attempted to make them mandatory." *Agsalud*, 633 F.2d at 764. The court also rejected the

state's contention that the Hawaii Act was a "disability insurance law" and therefore exempt from ERISA coverage under section 4(b)(3). The Hawaii Act was concerned with providing benefits "regardless of any relationship to a disabling condition," *id.*

**27.** Congress amended section 514(b) of ERISA in response to *Agsalud* by explicitly exempting Hawaii's Prepaid Health Care Act from ERISA preemption. *See* Act of Jan. 14, 1983, Pub.L. No. 97–473, § 301(a), 96 Stat. 2605, 2611–12 (codified at 29 U.S.C. § 1144(b)(5) (1988)).

the case is remanded to the district court for further proceedings.

*It is so ordered.*